**STATE of Iowa, Appellant,**

v.

**Hank Edward TUSING, Appellee.**

**No. 83–665.**

Supreme Court of Iowa.

Feb. 15, 1984.

Gerald N. Partridge, County Atty., for appellant.

Michael R. Mullins, of Day & Meeker, Washington, for appellee.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, SCHULTZ, and CARTER, JJ.

LARSON, Justice.

■ The state has appealed from an order dismissing a charge of carrying a dangerous weapon, Iowa Code §§ 702.7; 724.4. The narrow issue presented is whether brass knuckles are "dangerous weapons" under the definition of section 702.7. We hold it is an issue for the fact-finder whether they are "capable of inflicting death" as required by the statutory definition. Accordingly we reverse the order of dismissal and remand.

While the defendant, Tusing, was being processed on a charge of OMVUI, police officers discovered a set of brass knuckles and charged him with carrying a dangerous weapon in violation of Iowa Code sections 702.7 and 724.4. Section 724.4 incorporates the definition of a "dangerous weapon" found in section 702.7:

A *"dangerous weapon"* is any instrument or device designed primarily for use in inflicting death or injury upon a human being or animal, and which is capable of inflicting death upon a human being when used in the manner for which it was designed. Additionally, any instrument or device of any sort whatsoever which is actually used in such a manner as to indicate that the defendant intends to inflict death or serious injury upon the other, and which, when so used, is capable of inflicting death upon a human being, is a dangerous weapon. Dangerous weapons include, but are not limited to, any offensive weapon, pistol, revolver, or other firearm, dagger, razor, stiletto, or knife having a blade of three inches or longer in length.

The trial court's calendar entry notes only that the weapons charge was dismissed "in the interest of justice, brass knuckles not dangerous per se."

The defendant correctly notes that brass knuckles have been deleted from the laundry list of dangerous weapons found in the code before the 1979 revision. Iowa Code section 695.2 (1977), for example, prohibited concealed possession of certain weapons including a "dirk, dagger, sword, pistol, revolver, stiletto, *metallic knuckles*, pock-

et billy, sandbag, skull cracker, slug shot or other offensive or dangerous weapon, ...." (emphasis added). A similar list of weapons was also found in section 695.1 of the 1977 code, defining the crime of "going armed with intent."

The state notes, however, that *other* weapons have also been deleted, including swords, and argues that their deletion does not mean that they are not "dangerous" under the new statute. A weapon need not fall within the enumerated list of dangerous weapons, it argues, if it fulfills the test of the first sentence of section 702.7: (1) that it is an instrument or device designed primarily for use in inflicting death or injury upon a human being or animal; and (2) that it is capable of inflicting death upon a human when used as designed.

■ It is obvious that brass knuckles fulfill the first part of this test; unlike a revolver or a knife, which could be used for target shooting or to peel an apple, there is only one purpose for brass knuckles, and that is to inflict injury, presumably upon a human being.

The next prong of the test is more difficult. Are brass knuckles capable of inflicting *death* upon a human being? (It is not enough under the statute that they be capable of inflicting *injury*.) The state argues that brass knuckles would be capable of inflicting death if used in a blow to the trachea or brain stem. We have no doubt that some brass knuckles would have the capability to kill a person. For example, *Commonwealth v. Fisher*, 485 Pa. 8, 400 A.2d 1284 (1979), dealt with an instrument, a "Wyoming knife," that resembled brass knuckles with an attached razor blade. On the other hand, metallic knuckles could conceivably be so flimsily constructed so as to have little more impact on the victim than bare knuckles.

■ In contrast to knives, revolvers, and most other weapons, we cannot conclude as a matter of law that all brass knuckles are capable of inflicting death. That determination will turn on the design and construction of the particular set of

brass knuckles. We point out that the issue here is whether they are *capable* of inflicting death; the actual intent of the user is not the issue in deciding whether an instrument or device is "dangerous" under the definition in the first sentence of section 702.7.

We find no merit in Tusing's argument that, because brass knuckles are not among section 702.7's list of weapons, they are not a "dangerous weapon" unless "the person used or intended to use them for the purpose of bodily assault or defense." We held in *State v. Durham*, 323 N.W.2d 243, 244–245 (Iowa 1982), that a straight razor, because it was one of the objects listed, was per se dangerous, regardless of actual or intended use. While *Durham* dealt with a different part of section 702.7, the laundry list, its reasoning applies here as well. Proof of actual or intended use, under the second sentence of section 702.7, is only one of the three means of establishing a device as a dangerous weapon under that section. Under that section, a device is also a dangerous weapon, regardless of use or intended use, if it is (1) designed to inflict death or injury and actually capable of inflicting death on a human being; or (2) specifically enumerated as a dangerous weapon, as in *State v. Durham*.

The brass knuckles here fail the test of use or intended use, because there is no evidence to establish those factors. They also fail the enumerated-item test because they are not included in the list. As to the test of design and capability, however, we conclude as a matter of law that brass knuckles are "designed primarily for use in inflicting death or injury upon a human being or animal." While we do not hold as a matter of law that this particular set of brass knuckles was also "capable of inflicting death upon a human being," a fact-finder could conclude they are. It was error to hold as a matter of law that they were not capable of causing death.

Accordingly, we reverse and remand for further proceedings.

REVERSED AND REMANDED.