THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PATRICIA FREANEY, Appellant.

Second Department, May 6, 1985

### APPEARANCES OF COUNSEL

*Kassner, Haigney & Thomson (Herbert S. Kassner* and *Ronald T. Thomson* of counsel), for appellant.

*Denis Dillon, District Attorney (Anthony J. Girese* and *Lorna N. Graham* of counsel), for respondent.

### OPINION OF THE COURT

TITONE, J. P.

Defendant appeals from a judgment of the County Court, Nassau County, convicting her of promoting prostitution in the third degree and permitting prostitution, upon a jury verdict, and imposing sentence. Her central contention is that a conviction for promoting prostitution cannot be sustained absent proof that she was operating a house of prostitution on a systematic and continuous basis and, therefore, the trial court erred in declining her request to so instruct the jury. Finding no merit in this or any other of defendant's arguments, we affirm.

The underlying prosecution has its genesis in an undercover investigation conducted by Nassau County law enforcement agencies into organized prostitution activity in the county which focused on the Salem Social Club, a club owned and managed by the defendant. The club, located in Port Washington, was monitored by a doorman, who would screen entrants and collect an admission fee. Inside was a horseshoe bar, tended by two bar maids, equipped with a "love shower" where dancers would wash themselves for the customers' entertainment, and also a large sign reading "[w]e cater to bachelor parties".

In July 1982, an undercover detective became a member of the club. By December 1982, the detective had visited the club about 25 times and had noticed that many bachelor parties had been held downstairs during this period. Having gained the trust of the club's employees, the detective was able to make arrangements with the defendant for his own bachelor party to entertain 23 guests. He was offered the services of three "clean" "girls" to satisfy their sexual desires, at $50 per person for "whatever your pleasure [fellatio, sodomy]". The party took place as scheduled, with other undercover officers as the guests. It was evident, from the "girls'" behavior, that they would perform in accordance with the arrangement. For example, one of the "girls" began removing an undercover officer's clothes and dragged him to the backroom for the stated purpose of having intercourse and sodomy. Shortly thereafter, some officers identified themselves, stopped the party and arrested the participants with the assistance of other officers waiting outside.

Defendant had been at the party to ensure that all was running smoothly. She was also placed under arrest and charged with promoting prostitution in the third degree, a class D felony (Penal Law § 230.25), and lesser offenses.

At trial, defendant requested that the jury be instructed that it must find that she "was operating a continuous prostitution business on the premises, not merely a topless bar at which infrequent, occasional acts of prostitution took place" in order to convict her of promoting prostitution in the third degree. The trial court declined to do so.

On this appeal, defendant, relying upon language found in several cases decided under the repealed Penal Law of 1909, urges that a conviction for promoting prostitution "cannot be predicated upon an isolated instance of prostitution" and that the People must establish that "the defendant was, in effect, running a house of prostitution". We disagree.

To place the issue in focus, some background is helpful. At common law, the keeper of a bawdy house, i.e., a house to which persons may resort to for the purpose of prostitution, was guilty of a misdemeanor (Clark and Marshall, Crimes § 11.11 [7th ed]; 2 Wharton, Criminal Law § 275 [14th ed]). The nature of the offense was that the continued existence of bawdy houses is a public nuisance; hence, to "constitute a place a bawdyhouse or house of ill fame, it must be kept for the purpose of resort to prostitution. A single act of intercourse in a house is insufficient to thus classify the place" (Clark and Marshall, *op. cit.* § 11.11, at 785).

Interestingly, prostitution itself was not a common-law crime, unless the manner in which it was engaged constituted a public nuisance (2 Wharton, Criminal Law § 271 [14th ed]). It became a crime by statute and, despite the suggestion that prostitution should be decriminalized and treated as a licensed, regulated activity, virtually all jurisdictions continue to punish prostitution for utilitarian reasons as well as religious and moral ones (ALI Model Penal Code § 251.2, comment, at 456).

Prostitutes themselves are often victims of social or personal maladjustment. The parasite who "promotes" such activity is the real villain and his or her activity obviously deserves to be punished more severely than the act of prostitution itself (*see, People v Hashimoto,* 54 Cal App 3d 862, 126 Cal Rptr 848; 2 Wharton, Criminal Law § 274 [14th ed]). In order to do so, many Legislatures enacted separate statutory provisions expressly punishing the promotion of prostitution as a going business (2 Wharton, Criminal Law § 274 [14th ed]).

The Penal Law of 1909 punished prostitution in a " 'patchwork affair' ", dealing with separate constituent elements (*see, People v Jelke,* 1 NY2d 321, 326, quoting from *People v Draper,* 169 App Div 479, 488).* This approach was abandoned in the revised Penal Law in favor of a more integrated scheme patterned on ALI Model Penal Code § 251.2 (*see,* 2 Callaghan, Criminal Law in New York § 37:10 [3d ed]; Rothblatt, Criminal Law of New York, The Revised Penal Law § 185).

For present purposes, the Legislature created a "comprehensive offense" of " 'promoting prostitution' " and divided it into four degrees "differentiated by the varying kinds of promotional

---

* See, e.g., Penal Law of 1909 § 70 ("Abduction"), § 1090 ("Compulsory Prostitution of Wife"), § 1146 ("Keeping Disorderly Houses"), § 1148 ("Male Person Living on Proceeds of Prostitution"), § 2460 ("Compulsory Prostitution of Women").

activity involved and the relative seriousness thereof" (Hechtman, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 230.15, pp 177-178). The basic fourth degree offense is a misdemeanor committed when a person "knowingly advances or profits from prostitution" (Penal Law § 230.20) and is "generally utilized in cases where there are no aggravating factors, such as where a cab driver or bellhop directs someone, upon request, to a prostitute" (9 Zett, New York Criminal Practice ¶ 88.3 [3] [a]). The crime becomes a felony of varying degrees upon the finding of aggravating factors measured by the extent of the procurer's business, the tender age of the person procured, and the use of force or intimidation (Hechtman, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law §§ 230.25, 230.30, 230.32, pp 184, 185-186, 187; cf. ALI Model Penal Code § 251.2 [2], [3]).

The gist of the distinction between the third and fourth decrees of the crime, insofar as here pertinent, is the profiting from prostitution "by managing, supervising, controlling or owning * * * a house of prostitution or a prostitution business or enterprise involving prostitution activity by two or more prostitutes" (Penal Law § 230.25 [1]). Thus, contrary to the defendant's protestations, it is evident that the Legislature has made the commercial nature of the enterprise, not the number of times that prostitution is promoted, the controlling element.

Review of the record establishes that the defendant owned and managed the Salem Social Club. She procured prostitutes for the bachelor party as part of her regular catering business. The prostitution activity took place on the premises and a bed was maintained for this very purpose. Defendant was paid a deposit and was to collect a fee for these services at the end of the night. Unlike People v Gallucci (62 AD2d 1129), the testimony at trial, obviously credited by the jury, plainly established the promotion of prostitution in a commercial and organized manner. Indeed, even under the provisions of the Penal Law of 1909, a conviction might well have been sustained (see, People v Moore, 142 App Div 402, affd 201 NY 570; cf. People v Draper, 169 App Div 479, 491, supra [no fee received]; People v Odierno, 166 Misc 108).

The charge, as given, tracked the pattern jury instruction on the subject (3 CJI[NY] PL 230.25 [1], pp 1953-1956) and correctly focused the jury on the pertinent issues in the case. Insofar as defendant complains that the Trial Judge refused certain other requests to charge, we would simply note that a Trial Judge is not bound to employ the specific language requested by counsel, provided that the jury, as here, is adequately

apprised of the governing legal principles (*People v Dory,* 59 NY2d 121, 129; *People v Dengler,* 109 AD2d 847).

We have considered the remaining assignments of error, to the extent preserved, and have found them to lack merit.

Accordingly, the judgment should be affirmed, and the case remitted to the County Court, Nassau County, for execution of the sentence (CPL 460.50 [5]).

LAZER, NIEHOFF and RUBIN, JJ., concur.

Judgment of the County Court, Nassau County, rendered September 15, 1983, affirmed.

The case is remitted to the County Court, Nassau County, for further proceedings pursuant to CPL 460.50 (5).