STATE of Iowa, Plaintiff-Appellee,

v.

Terry MITCHELL, Defendant-Appellant.

No. 84–966.

Court of Appeals of Iowa.

May 28, 1985.

Fern S. Shupeck, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., and Lona Hansen, Asst. Atty. Gen., for plaintiff-appellee.

Heard by OXBERGER, C.J., and DONIELSON, and HAYDEN, JJ.

OXBERGER, Chief Judge.

This court is asked to consider in the defendant's appeal whether the martial arts weapon known as "nunchakus" is a dangerous weapon as defined in section 702.7 of our Code. We conclude that the evidence presented at defendant's trial was sufficient to allow the fact finder to decide nunchakus are dangerous weapons.

We initially note that in order to prevail in his claim the defendant must show that in viewing the evidence in the light most favorable to the State the verdict is not supported by sufficient evidence. *State v. Robinson*, 288 N.W.2d 337, 338 (Iowa 1980). Evidence is sufficient when there is substantial evidence from which a rational fact finder could determine defendant is guilty of the crime beyond a reasonable doubt. *Id.*, at 339.

The defendant was arrested on December 17, 1983, for public intoxication and carrying a weapon, after police found a pair of nunchakus inside defendant's coat. A jury convicted defendant of carrying a dangerous weapon in violation of section 724.4 of the Code. A dangerous weapon is defined in our Code as follows:

A "dangerous weapon" is any instrument or device designed primarily for use in inflicting death or injury upon a

human being or animal, and which is capable of inflicting death upon a human being when used in the manner for which it was designed. Additionally, any instrument or device of any sort whatsoever which is actually used in such a manner as to indicate that the defendant intends to inflict death or serious injury upon the other, and which, when so used, is capable of inflicting death upon a human being, is a dangerous weapon. Dangerous weapons include, but are not limited to, any offensive weapon, pistol, revolver, or other firearm, dagger, razor, stiletto, or knife having a blade of three inches or longer in length.

Iowa Code § 702.7 (1985). A two-part test has been set out to determine if an instrument is a dangerous weapon when not enumerated in the Code or actually used or intended to be used as a dangerous weapon. In *State v. Tusing*, 344 N.W.2d 253, 255 (Iowa 1984) the court stated an object is a dangerous weapon regardless of its use or intended use if: (1) it is designed to inflict death or injury, and; (2) is actually capable of inflicting death on a human being.

■ The defendant concedes that the State's expert established the first part of the *Tusing* test. The expert indicated nunchakus are two sticks connected by a short rope or chain and were originally developed in the 14th or 15th century by Asian farmers to thresh grain. The device survives today only as a weapon. The defendant argues, however, that a person must be skilled in the use of nunchakus in order for the sticks to be capable of inflicting death. Since the State never established defendant was trained in the use of nunchakus, he contends there is insufficient proof they were "capable of inflicting death." *Id.*

The State's expert was asked to describe the various methods of using nunchakus and explained the maneuvers as follows:

If you have the opportunity to use these I would have to say that the striking or sending it into motion would have probably the greatest impact. There are a number of things that you can do that would cause centrifugal force to increase and one is to lengthen out the circle in which you use—in using it to strike an opponent.

And there are other ways in which you can use it and one is what we call the nutcracker principle where you can get behind an opponent and wrap it around their neck this way and to shut off the flow of blood to the brain. It's like a sleeper hold in wrestling where you can shut off the carotid artery and get them to pass out.

Q. If you used a nunchakus such as this as a nutcracker would that have any effect on a person's trachea or windpipe? A. Well, if you would approach your opponent from the back side here and put the force on the outside where the jugular vein is, the carotid artery, that would, of course, shut off the flow. Now, if I would approach my opponent from this this way I could collapse probably the cartilage ring that holds up the trachea so if I used a nutcracker this way and if there was shorter distance between this it would be more effective but with the length that is here it's probably three inches here, and four inches, then they have to use a cross technique. You can still have a crushing effect on the trachea. Other things that you can do with the nunchakus is what you call a sling shot action. We try to hit the opponent by swinging it out and having the end like these are right here where the weights are and to strike the opponent in the area of the head. I hope these don't fly at you. There are dangerous and it would be an action like this. And what a user will do usually is to stun his opponent, stun the opponent here, this area, and continue the circle and do what we call a figure eight. They would attack the side of the skull, the elbows, the ribs and the knees and then they will come back in this position or they will go in the underneath figure eight where you would strike in the brain area, and when they hold it in this position here they can either strike an opponent from on top, figure eight, on top of

the skull or they can come from underneath and strike in the chin area and continue it this way.

This testimony shows that nunchakus may be used by wrapping the device around the victim's neck or striking the person on the head or neck. Because of the design of the sticks, the striking motion has more power since centrifugal force in swinging the sticks increases its impact. While the expert described several more elaborate methods of using the sticks which would require skill, other uses of the sticks do not require training. He further indicated nunchakus used in this manner can cut off the flow of blood to the brain, collapse the cartilage that holds up the trachea and crush a person's skull. We believe the evidence was sufficient to allow a jury to find such use could cause death.

We also find no indication in section 702.7 or in the *Tusing* test the possessor of the weapon must be trained in its use in order for it to be a dangerous weapon.

Defendant says that without the proper training and the crude design of the homemade nunchakus he possessed, they were more dangerous to the user than to the potential victim. This could also be said of the use of a gun by a person untrained in the firearms. This does not negate the fact that death can be inflicted by the untrained person using either a gun or nunchakus.

We hold that there was substantial evidence to present the question to the jury of whether the nunchakus were a dangerous weapon and uphold defendant's conviction.

AFFIRMED.