STATE of Iowa, Plaintiff-Appellee,

v.

Joe CLARK, Defendant-Appellant.

No. 86–802.

Court of Appeals of Iowa.

March 31, 1987.

Charles L. Harrington, Chief Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Iowa, and Bruce Kempkes, Asst. Atty. Gen., for plaintiff-appellee.

Heard by SCHLEGEL, P.J., and HAYDEN, and SACKETT, JJ.

HAYDEN, Judge.

Des Moines Police Officer Debra Richardson, on the night of August 8, 1985, was working in a decoy operation conducted by the city's vice unit. The operation was directed at males who solicit prostitutes in the vicinity of Sixth Avenue in Des Moines. Officer Richardson was equipped with a hidden electronic eavesdropping device and was shadowed by officers in a patrol car

who monitored and taped her conversations.

Officer Richardson was approached by defendant about twenty minutes after midnight. At trial she summarized their encounter as follows:

I turned around and saw him yelling at me, so I walked up to the car and asked him what he wanted, and he wanted to know what I was doing, and I just told him I was waiting for a friend, and he wanted to know who my pimp was, told him, "I don't have one," I was waiting for a friend, and then he told me that he had a proposition deal for me, he wanted to talk business, that he had a house just down the street, an eight-room house, and he wanted to talk to me about what I could do, and then he made the comment that he wanted to get out of that particular area right there because the police were in the area, he was afraid the police might see him, that they come around too often.

So we proceeded to arrange just to have him pull around so he would be on Seventh Street just south of College. Wasn't even a half a block down the street. So that's what we did. I told him that I would, but I wouldn't get in the car, that I didn't know who he was. He told me what his name was. I told him I had no idea who he was, I didn't know the area, I was waiting for a friend. And he kept at that time asking me if I was working. I told him no, I was unemployed, and I was just lost in the area, but he still wanted to talk to me. Told me—I did tell him I was short of cash, and he said he had a way for me to make some money.

So we then proceeded to go down a half block on Seventh Street just south of college. Once we stopped there, I did sit in the car, one door open, one foot in, one foot out, and I repeatedly told him that I was unemployed and I was not a working person, and then he asked me if I would do tricks and I asked him what he meant by "tricks," what he was talking about, what I'd have to do to make money, and then I asked him if he meant by "tricks" —if he meant sex acts, and he told me,

"Yes," that's what he meant, that he wanted me to sell my body for money, for big bucks. Big bucks is the word he used, and he was talking 40, 50, 60 dollars for a trick.

The street terminology "trick" is any kind of sex act on the street, and I repeat—like I say, I repeatedly told him I did not do that, I never had to do that, I didn't know what I'd be doing, and he just kept saying he had a place of business down the street, his house, and that I could go down there and he'd help me out, he'd keep me in the house until I had enough money to find my own place to live.

Upon review of the actual transcript of the conversation, we find Officer Richardson's rendition to be reasonably accurate.

The backup officers monitored and taped the conversation with defendant. Once the officers believed they had enough evidence to establish pandering, they approached defendant's vehicle and identified themselves as police. Defendant was not arrested until a later date.

On January 22, 1986, the Polk County attorney filed a trial information charging defendant with the crime of pandering, in violation of section 725.3, Iowa Code (1985). Section 725.3 provides in pertinent part:

A person who persuades or arranges for another to become an inmate of a brothel, or to become a prostitute, such person not having previously engaged in prostitution, ... commits a class "D" felony.

Defendant's trial to a jury commenced on April 7, 1986. Following the close of State's evidence and again after defense rested, defendant unsuccessfully moved for judgment of acquittal. On April 9, 1986, the jury returned a verdict finding defendant guilty of pandering and the trial court fined him $500.

On appeal defendant contends that the State failed to prove beyond a reasonable doubt that defendant is guilty of the crime of pandering. More specifically defendant argues the State failed to prove defendant persuaded or arranged for Officer Richardson to become a prostitute. He also as-

serts the State failed to prove Officer Richardson had not previously engaged in prostitution. Our scope of review is limited to correction of errors at law. Iowa R.App. P.4.

■■■ When considering a challenge to the sufficiency of the evidence we view the evidence in a light most favorable to the State and we consider all evidence and inferences that may be drawn from it. *State v. Craney*, 347 N.W.2d 668, 680 (Iowa 1984), *cert. denied*, 469 U.S. 884, 105 S.Ct. 255, 83 L.Ed.2d 192 (1984); *State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980). Evidence is sufficient to sustain the verdict where there is substantial evidence from which a rational jury could determine defendant guilty beyond a reasonable doubt. *Robinson*, 288 N.W.2d at 330; *State v. Mitchell*, 371 N.W.2d 432 (Iowa Ct.App. 1985).

The trial court, in its instructions, set forth the elements of pandering as follows:

1. That on or about August 8, 1985, the defendant persuaded or arranged for Debbie Richardson to become a prostitute.

2. That the defendant was not acting under a mistake of fact.

3. That Debbie Richardson had not previously engaged in prostitution.

The State had the burden of proving each and every element of pandering beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368, 375 (1970).

## I.

In order to clarify defendant's arguments and our own explanations, a brief discussion of prostitution and the crimes surrounding it is necessary. Prostitution was not a common-law crime, unless the manner in which it was engaged constituted a public nuisance. 2 Wharton's Criminal Law § 271 (14th ed. 1979). It became a crime through statute and, despite suggestions that prostitution should be decriminalized, virtually all jurisdictions in this country continue to punish prostitution for utilitarian as well as religious and moral reasons. ALI Model Penal Code § 251.2, Comment (1980) and *People v. Freaney*, 108 A.D.2d 228, 230, 488 N.Y.S.2d 759, 761 (1985).

■■■ "The life-blood of prostitution is not the prostitute but the parasite who 'promotes' prostitution. It is the promoter who makes prostitution a going business: therefore, his activity is usually punished more severely than prostitution itself." 2 Wharton's Criminal Law § 274 (14th ed. 1979). In order to combat these vermin the Iowa legislature has enacted certain statutory provisions expressly punishing the promotion of prostitution. Iowa Code §§ 725.-2, .3, and .4 (1985). Regarding "pimping," section 725.2 provides:

A person who solicits a patron for a prostitute, or who knowingly takes or shares in the earnings of a prostitute, or who knowingly furnishes a room or other place to be used for the purpose of prostitution, whether for compensation or not, commits a class "D" felony.

The pimp is "the prostitute's consort" while the panderer is "the recruiter-business manager." Committee Comments to Ill. Ann.Stats., 38 § 11–16 (1979) and *People v. Russell*, 69 Ill.App.3d 59, 62, 25 Ill.Dec. 521, 523, 386 N.E.2d 1369, 1371 (1979). Pandering describes the activities of one who recruits prostitutes; pimping is the function of living off the earnings of the prostitute. *Id.*

■■■ In his brief, defendant argues that his conduct falls within the parameters of solicitation for prostitution. He cites Iowa Code section 705.1 (1985), which provides in relevant part:

Any person who ... attempts to persuade another to commit a particular felony or misdemeanor, with the intent that such act be done and under circumstances which corroborates that intent by clear and convincing evidence, solicits such other to commit that felony or aggravated misdemeanor.... One who solicits another to commit an aggravated misdemeanor commits an aggravated misdemeanor.

He argues section 705.1 should be read in conjunction with the prostitution statute,

section 725.1, Iowa Code (1985), which provides:

A person who sells or offers for sale the person's services as a partner in a sex act, or who purchases or offers to purchase such services commits an aggravated misdemeanor.

Together, he argues, this combination of statutes creates the offense of solicitation of prostitution. However, the offense of prostitution (section 725.1) is defined so as to include acts of solicitation, therefore section 705.1 should be disregarded as irrelevant since one cannot be guilty of soliciting an act which is itself a solicitation. 4 Yeager & Carlson, Iowa Practice § 102 (1979). For defendant to have been charged with solicitation for prostitution he had to have violated section 725.1. Defendant had not purchased or offered to purchase Officer Richardson's sexual services; therefore he did not commit the offense of solicitation for prostitution.

Defendant's argument on appeal suggests an alternative to this analysis. He asserts that defendant, through his action of soliciting Officer Richardson to become a prostitute, committed the crime of solicitation for prostitution. We disagree. Rather, defendant "solicited" Officer Richardson to become a prostitute, not for an act of prostitution (section 725.1). For any crime of solicitation to occur in the present case, section 705.1 must be read in conjunction with section 725.3, to create the unheard of crime of solicitation for pandering. This crime is unknown because, as with the prostitution statute, solicitation is included within the pandering statute. The Polk County Attorney was correct in charging defendant with pandering under section 725.3, and not solicitation under section 705.1, since the specific substantive statute controls over the general statute. *Cartee v. Brewer*, 265 N.W.2d 730, 733 (Iowa 1978).

## II.

Defendant argues the State failed to prove defendant persuaded or arranged for Officer Richardson to become a prostitute. He contends the State was required to show Officer Richardson actually agreed to become a prostitute or defendant made actual arrangements for Officer Richardson to engage in prostitution. He contends the legislature did not propose to punish mere attempts or offers under the pandering statute. Under section 725.3, a person who persuades or arranges for another to become a prostitute commits pandering. We are concerned only with the arrangement element.

The dictionary defines arrange as: to put in order; make preparations for, plan; come to an agreement or understanding about; or effect, usually by consulting. *Webster's Third New International Dictionary*, 120 (1976). Our Supreme Court has adopted this definition. *State v. Williams*, 315 N.W.2d 45, 50 (Iowa 1982).

When considering the meaning of a criminal statute, courts may consider the evil sought to be remedied and the purposes or objectives of the enactment. *State v. Sullivan*, 298 N.W.2d 267, 271 (Iowa 1980). The purpose of section 725.3 is to prevent the spread of prostitution by imposing punishment for those individuals who encourage and promote commission of the crime. *Williams*, 315 N.W.2d at 50. The legislature, in using the terms "persuades" or "arranges" did not intend to require an act of actual prostitution as an element of the crime of pandering. *Id.* The supreme court adopted in *Williams* the following: "the crime (pandering) is committed when the inducement is attempted and that an act of prostitution need not occur." *Id.* It is the recruiting and management activity, and not its success, which is the evil sought to be prohibited under a pandering statute. *People v. Hasimoto*, 54 Cal.App.3d 862, 866, 126 Cal.Rptr. 848, 850 (1976); *People v. McCall*, 52 Ill.App.3d 407, 409, 10 Ill. Dec. 200, 203, 367 N.E.2d 588, 591 (1976).

On the night of August 8, 1985, defendant approached Officer Richardson, told her he had a deal for her, and wanted to talk business. Defendant said he owned an eight-room house, which was his place of business, and she could go to this house. Defendant told Officer Richardson he wanted her to sell her body for money. He described the work as tricks, sex acts, and said she could make big bucks. He also said she could go to his house and he would take care of her needs. We conclude the

evidence presented was sufficient to convince a rational fact finder beyond a reasonable doubt defendant arranged (made preparations) for Officer Richardson to become a prostitute. A panderer recruits prostitutes and sets them up in business. The purpose of section 725.3 is to prevent these activities, and the only logical method to enforce this purpose is to punish the process and not wait for the panderer to be successful.

### III.

Finally, defendant argues the state failed to prove Officer Richardson had not previously engaged in prostitution. Specifically he argues the State failed to show that Officer Richardson had not purchased or offered to purchase sexual services, as provided under section 725.1, Iowa Code (1985). We disagree.

As mentioned earlier, section 725.1 contains not only the crime of prostitution, but also solicitation of prostitution. Defendant argues for section 725.3 to apply the State has the burden to prove the object of the panderer never engaged in solicitation of prostitution. The pertinent portion of section 725.3 provides, "such person not having previously engaged in prostitution." Section 725.3 seeks to prevent the panderer from recruiting another to become a prostitute. Section 702.15, Iowa Code (1985), defines a prostitute as "a person who sells or offers for sale the person's services as a participant in a sex act." Both sides agree upon the fact Officer Richardson testified she never sold or offered to sell her services as a participant in a sex act. We believe the State sustained its burden regarding this element of the crime.

However, even if a showing of the "victim's" virtue must be established, we find from the record considered as a whole, sufficient evidence existed whereby the jury could find defendant guilty beyond a reasonable doubt.

AFFIRMED.