# IN THE COURT OF APPEALS OF IOWA

No. 14-1309
Filed June 24, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JASON ALLEN EATON,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, James D. Birkenholz, (guilty plea) District Associate Judge, and Carla T. Schemmel (sentencing), Judge.

A defendant challenges the factual basis supporting his guilty plea for carrying weapons. **SENTENCE VACATED AND REMANDED FOR FURTHER PROCEEDINGS.**

Mark C. Smith, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary A. Triick, Assistant Attorney General, John P. Sarcone, County Attorney, and Kevin Bell and Robert DiBlasi, Assistant County Attorneys, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, J.**

Jason Eaton kept brass knuckles in his glove box for personal protection. For that conduct, the State charged Eaton with carrying weapons, in violation of Iowa Code section 724.4(1) (2013). Eaton entered a written guilty plea admitting he concealed the brass knuckles "about his person." On appeal, Eaton challenges the factual basis for his plea, asserting the State did not show the brass knuckles satisfied the definition of "dangerous weapon" in Iowa Code section 702.7. Eaton contends his counsel was ineffective for allowing him to plead guilty in the absence of a factual basis.

Because nothing in the record shows the brass knuckles in question were capable of inflicting death on a human being, we vacate the sentence and remand for further proceedings.

Eaton's weapons charge stemmed from a traffic stop on April 6, 2014. According to a law enforcement report attached to the minutes of testimony, Polk County Sheriff's Deputy Ryan Phillips pulled over the Ford Ranger that Eaton was driving because the windshield was cracked. The deputy learned Eaton's license was suspended and asked if Eaton had "anything illegal in the vehicle." Eaton revealed there was a set of brass knuckles in the glove box, which the deputy retrieved. Eaton said "he had been carrying them around because his ex-girlfriend had been sending her friends after him and a couple of times they had confronted him in public places."

The State charged Eaton by trial information with the aggravated misdemeanor offense of carrying weapons under section 724.4(1). Eaton filed a

written petition to plead guilty. The district associate court accepted his plea and set the matter for a joint sentencing and probation revocation hearing. The sentencing court imposed an indeterminate two-year prison term, to run concurrently with the sentence on the probation violation. He challenges his plea and sentence. Because we vacate the sentence and remand on the guilty-plea issue, we do not address Eaton's separate sentencing claim.

While we generally review guilty-plea challenges for correction of legal error, when the claim is raised as ineffective assistance of counsel, our review is de novo. *State v. Ortiz*, 789 N.W.2d 761, 764 (Iowa 2010). To prove ineffective assistance, Eaton must demonstrate by a preponderance of evidence that his attorney failed to perform an essential duty, resulting in prejudice. *See id.* at 764–65. Counsel violates an essential duty by permitting a client to plead guilty and waive the right to file a motion in arrest of judgment when no factual basis supports the plea. *Id.* We presume prejudice under these circumstances. *Id.*

To succeed on the essential-duty prong, Eaton must show the record lacks a factual basis to support his guilty plea to carrying weapons. *See* Iowa Code § 724.4(1). The State must prove the brass knuckles carried by Eaton fit the definition of dangerous weapon under section 702.7.

Section 702.7 defines dangerous weapons in three different ways. *See Ortiz*, 789 N.W.2d at 765. First, the statute offers the following general definition: "any instrument or device designed primarily for use in inflicting death or injury upon a human being or animal, and which is capable of inflicting death upon a human being when used in the manner for which it was designed." Iowa Code

§ 702.7. Second, the statute includes a list of *per se* dangerous weapons. *Id.* Third, the statute defines dangerous weapons in terms of their actual use, that is, "any instrument or device of any sort whatsoever which is actually used in such a manner as to indicate that the defendant intends to inflict death or serious injury upon the other, and which, when so used, is capable of inflicting death upon a human being." *Id.*

Only the first, general definition of dangerous weapon is at issue here. The second category is not relevant because "metallic knuckles" were removed from the *per se* "laundry list of dangerous weapons" found in the statutory definition before the 1979 code revision. *State v. Tusing*, 344 N.W.2d 253, 254 (Iowa 1984). The third category is not in play because Eaton was not actually using the brass knuckles when stopped by the deputy. When a device is not enumerated in section 702.7 and is not actually used as a dangerous weapon, we apply a two-part test to decide if the device fits the general definition of dangerous weapon. An object is a dangerous weapon regardless of its use or intended use if: (1) it is designed to inflict death or injury, and (2) is actually capable of inflicting death on a human being. *Id.* at 255.

Our supreme court had no trouble concluding "brass knuckles fulfill the first part of this test; unlike a revolver or a knife, which could be used for target shooting or to peel an apple, there is only one purpose for brass knuckles, and that is to inflict injury, presumably upon a human being." *Id.* at 254. The *Tusing* court found the next prong of the test to be more difficult, querying: "Are brass knuckles capable of inflicting *death* upon a human being?" *Id.* The *Tusing* court

in essence answered its own question with "it depends." The court acknowledged some brass knuckles, for instance an instrument called a "Wyoming knife" which featured an embedded razor blade, could be deadly. *Id.* But the court also envisioned metallic knuckles "so flimsy" they would have little more impact on a victim than bare knuckles. *Id.* The court decided the question of whether a particular set of brass knuckles was capable of inflicting death was a fact question. *Id.*; *cf. State v. Mitchell*, 371 N.W.2d 432, 433 (Iowa 1985) (upholding weapons conviction where martial arts expert testified nunchakus were capable of inflicting death on a human).

Our record contains no photograph of Eaton's brass knuckles. The brass knuckles were not described in the minutes of evidence or attached law enforcement report. The plea hearing was unreported, so we do not have access to the parties' statements. In his handwritten statement on the petition to plead guilty regarding the factual basis for the offense, Eaton did not admit the brass knuckles were capable of inflicting death, nor did he admit more generally that they were a dangerous weapon. On this record, we cannot decipher a sufficient factual basis to uphold Eaton's guilty plea.

Contemplating the possibility of this outcome, the State argues in the alternative that *Tusing* should be overruled. As the intermediate appellate court, we cannot disturb the supreme court's precedent. *See State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014).

On the issue of remedy, we believe it may be possible for the State to show a factual basis for Eaton's plea based on additional facts and circumstances that do not appear in the minutes of testimony. Thus, we vacate his sentence, but remand to allow the State an opportunity to supplement the record. *See State v. Schminkey*, 597 N.W.2d 785, 792 (Iowa 1999); *State v. Hallock*, 765 N.W.2d 598, 604 (Iowa Ct. App. 2009). If a factual basis cannot be shown, Eaton's plea must be set aside.

**SENTENCE VACATED AND REMANDED FOR FURTHER PROCEEDINGS.**