# IN THE COURT OF APPEALS OF IOWA

No. 23-1998
Filed March 19, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**BRIAN THOMAS WOODS,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Ackley, Judge.

The defendant appeals his convictions for interference with official acts with a dangerous weapon and carrying a weapon while under the influence. **AFFIRMED.**

Chris Raker of Alliance Law Office, P.C., East Dubuque, Illinois, for appellant.

Brenna Bird, Attorney General, and Olivia D. Brooks, Assistant Attorney General, for appellee.

Considered by Schumacher, P.J., Langholz, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**POTTERFIELD, Senior Judge.**

A jury found Brian Woods guilty of interference with official acts with a dangerous weapon (count I) and carrying a weapon while under the influence (count II).[1] On appeal, Wood argues (1) there is insufficient evidence that either of the two knives involved—a three-inch folding knife and a four-inch fixed blade knife—are a "dangerous weapon" and (2) the jury instruction defining dangerous weapon was incomplete.

**I. Discussion.**

**A. Jury Instruction.**

We start with Woods's challenge of the "dangerous weapon" instruction given to the jury. The district court instructed the jury:

> A "dangerous weapon" is any device or instrument designed primarily for use in inflicting death or injury, and when used in its designed manner is capable of inflicting death. It is also any sort of instrument or device actually used in such a way as to indicate the user intended to inflict death or serious injury, and when so used is capable of inflicting death.

Iowa Crim. Jury Instructions 200.21. Woods did not disagree with this part of the instruction; he asked the court to include some of the per se dangerous weapons as defined by statute. *See* Iowa Code § 702.7 (2022) ("Dangerous weapons include but are not limited to any offensive weapon, pistol, revolver, or other firearm, dagger, razor, stiletto, switchblade knife, knife having a blade exceeding five inches in length, or any portable device or weapon directing an electric current,

---

[1] Woods was charged with two counts of carrying a dangerous weapon while under the influence based on two separate knives he was carrying. Count II pertained to a four-inch fixed knife blade, and count III related to a three-inch folding knife. The jury acquitted Woods of count III while finding him guilty of count II.

impulse, wave, or beam that produces a high-voltage pulse designed to immobilize a person."). Woods asked the court to instead provide this instruction:

> A "dangerous weapon" is any instrument or device designed primarily for use in inflicting death or injury upon a human being or animal, and which is capable of inflicting death upon a human being when used in the manner for which it was designed.
> Additionally, any instrument or device of any sort whatsoever which is actually used in such a manner as to indicate the defendant intends to inflict death or serious injury upon the other, and which, when so used, is capable of inflicting death upon a human being.
> Dangerous weapons include but are not limited to any offensive weapon, pistol, revolver, or any other firearm, dagger, razor, stiletto, switchblade knife, or a knife having a blade longer exceeding five inches in length.

Woods explained that he wanted to contrast a five-inch blade's inclusion as a per se dangerous weapon with the three-inch and four-inch blades at issue here when arguing the knives he had in his possession were not dangerous weapons under the statute. The State resisted, arguing there was no claim the knives at issue in Woods's case were per se dangerous weapons and including the additional information would likely confuse the jury. The State maintained the fact that a five-inch blade was a dangerous weapon per se was irrelevant to the question the jury was being asked to decide and argued the defense's wish to discuss "that [Woods] did not possess a five-inch knife is no more relevant than [Woods] did not possess a bomb." The district court rejected Woods's request, giving the jury the model instruction.

"We generally review a district court's refusal to give a requested jury instruction for errors at law; however, if the jury instruction is not required but discretionary, we review for an abuse of discretion." *State v. Davis*, 975 N.W.2d 1, 8 (Iowa 2022) (cleaned up). "We consider the jury instructions as a whole rather

than in isolation to determine whether they correctly state the law." *Id.* (cleaned up).

As he did to the district court, Woods argues the jury should have been given the list of per se dangerous weapons so he could argue in comparison that the three- and four-inch blades at issue were not dangerous. He maintains this additional information would "better inform and equip jurors in their decision-making." But we agree with the State; the additional information and the comparison Woods wish to make would more likely mislead and confuse the jury than aid it. First, there was no allegation the knives at issue were per se dangerous weapons. *See State v. Johnson*, 7 N.W.3d 504, 508 (Iowa 2024) ("[T]he court's instructions must convey the applicable law in such a way that the jury has a clear understanding of the issues it must decide."); *see also Vachon v. Broadlawns Med. Found.*, 490 N.W.2d 820, 822 (Iowa 1992) ("Requested instructions that are not related to the factual issues to be decided by the jury should not be submitted even though they may set out a correct statement of the law."). And second, the argument Woods wished to make was misleading. It is not accurate to make a negative inference based on an instrument's exclusion from the list (i.e., "this instrument is not a 'dangerous weapon' because the legislature did not include it in the list"). Unincluded instruments just take a different path to determine whether they are "dangerous weapons" under section 702.7.

"[A]lmost any instrumentality under certain circumstances" can be a dangerous weapon. *State v. Ortiz*, 789 N.W.2d 761, 767 (Iowa 2010) (citation omitted). For example, while a baseball bat is not a per se dangerous weapon, it is a dangerous weapon when a defendant uses it to cut off a person's supply of

oxygen until the person dies.  *Cf. State v. Green*, 896 N.W.2d 770, 781–82 (Iowa 2017).  The question for the factfinder in that instance—as here, with the three- and four-inch blade—is whether "the instrument or device [was] designed primarily for use in inflicting death or injury . . . [and] is capable of inflicting death when used in the manner for which it was designed" or whether it was "actually used in such a manner as to indicate the [the user] intend[ed] to inflict death or serious injury upon the other, and which, when so used, is capable of inflicting death."  Iowa Code § 702.7; *see Ortiz*, 789 N.W.2d at 765, 767.  If either of those definitions are met, then the instrument is a dangerous weapon.

The per se dangerous weapon list is irrelevant in deciding whether the three- or four-inch blades at issue here met the other dangerous weapon definitions.  And how similar or dissimilar those knives were from the instruments included on the list is not properly part of the jury's decision.  So, the district court did not err or abuse its discretion in rejecting Woods's requested jury instruction.[2]

---

[2] At trial, Woods argued the failure to give his requested instruction violated his rights under article I, sections 9 and 10 of the Iowa Constitution and the Fifth and Sixth Amendments to the United States Constitution.  On appeal, he claims in passing that his state and federal due process rights were violated by the court's omission of the per se dangerous weapons in the jury instruction.  Insofar as Woods' preserved his argument for appeal and sufficiently developed it for our review, we conclude that because the district court did not err in refusing to give his instruction, there could be no violation of his constitutional rights.  *See Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (noting that, in determining whether there was a due process violation based on an erroneous jury instruction, the court must look at the instructions in their entirety and decide "whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process" (alteration in original) (citation omitted)).

**B. Sufficiency of the Evidence.**

Woods challenges the sufficiency of the evidence supporting each of his convictions.[3] We review "challenges to the sufficiency of the evidence for the correction of legal error." *State v. Banes*, 910 N.W.2d 634, 637 (Iowa Ct. App. 2018). We affirm when the verdict is supported by substantial evidence. *Id.* "Evidence is substantial when the quantum and quality of evidence is sufficient to 'convince a rational fact finder that the defendant is guilty beyond a reasonable doubt.'" *Id.* (citation omitted). In conducting our review, we do not resolve conflicts in the evidence, decide the credibility of witnesses, or weigh the evidence—those decisions are for the factfinder. *See State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006). Instead, we consider the evidence in the light most favorable to the verdict, "including all reasonable inferences that may be fairly drawn from the evidence." *Banes*, 910 N.W.2d at 637.

---

[3] Both count I and count II share a common element that the prohibited act involved a "dangerous weapon." To establish interference with an official act while displaying a dangerous weapon, the State had to prove:

> (1) On or about the 10th day of June, 2022, [Woods] knew Kim Hoover was a peace officer who was acting in her capacity to maintain safety at the Emergency Room at Mercy Hospital.
> (2) [Woods] knowingly resisted or obstructed Officer Kim Hoover in performing her duty to ensure the safety of the staff and occupants of the Emergency Room at Mercy Hospital.
> (3) [Woods] displayed a dangerous weapon.

For count II, the jury was instructed:

> As to Count II regarding Exhibit 4 [the four-inch fixed blade knife]: The State must prove all of the following elements of carrying a dangerous weapon under the influence:
> (1) On or about June 10, 2022, [Wood] carried a dangerous weapon on or about his person.
> (2) While carrying the weapon, [Wood] was under the influence or intoxicated.

Wood challenges each conviction on appeal, arguing insufficient evidence supports the jury's determination the four-inch fixed blade knife[4] met the legal definition of a "dangerous weapon," which was a common element in each crime.

An instrument is a dangerous weapon if it is designed primarily for use in inflicting death or injury, and when used in its designed manner is capable of inflicting death or if it is actually used in such a way as to indicate the user intended to inflict death or serious injury, and when so used is capable of inflicting death. *See* Iowa Code § 702.7; *see also Ortiz*, 789 N.W.2d at 765, 767. We are required to affirm Woods's convictions if at least one alternative theory presented to the jury is supported by substantial evidence. *See* Iowa Code § 814.28 ("If the jury returns a general verdict, an appellate court shall not set aside or reverse such a verdict on the basis of a defective or insufficient theory if one or more of the theories presented and described in the . . . instruction is sufficient to sustain the verdict on at least one count."). We consider the first path—whether the four-inch fixed blade knife was designed primarily for inflicting death or injury and if it is capable of inflicting death. *See, e.g.*, *State v. Tusing*, 344 N.W.2d 253, 255 (Iowa 1984). In this case, both questions are for the jury to decide. *Cf. id.* (concluding "as a matter of law that brass knuckles are 'designed primarily for use in inflicting death or injury'" (citation omitted)). In considering whether the four-inch knife was capable of inflicting death, "the actual intent of the user is not the issue." *Id.*

---

[4] We limit our consideration to only the knife with the four-inch fixed blade. Count II, of which Woods was found guilty, was explicitly limited to consideration of that knife. While count I did not specifically mention either the three-inch folding knife or the four-inch fixed blade knife, the undisputed evidence at trial was that Woods never displayed the three-inch folding knife; an officer removed it from Woods's pocket following a pat-down of Woods.

The jury was able to see the four-inch fixed blade knife in the video from Officer Kim Hoover's body camera footage of her interaction with Woods at the hospital and see the knife in person during the trial.  The jurors, using their common sense, could determine the knife at issue was designed primarily for use in inflicting death or injury.  *See State v. Bice*, No. 19-0863, 2020 WL 3264401, at *4 (Iowa Ct. App. June 17, 2020) ("Factfinders are allowed to rely on common knowledge, history, common sense, and experience and observations of the affairs of life."); *see also State v. Troupe*, No. 11-0354, 2013 WL 264324, at *2 (Iowa Ct. App. Jan. 24, 2013) (concluding there was substantial evidence to find knife was a dangerous weapon where the jury could see the knife on footage from a security camera and it "was a bigger knife"—not "like, a butter knife"); *Ayabarreno v. State*, No. 18-1973, 2020 WL 375939, at *4 (Iowa Ct. App. Jan. 23, 2020) (affirming conviction for first-degree robbery based on conclusion that the "large" or "big" knife met the definition of dangerous weapon).  Having seen the knife in question, the jury could reasonably conclude "[i]t was not designed to open a letter, clean fingernails, pare an apple, or for any other benign purpose for which a knife with a less than five-inch blade may be designed."  *In re F.A.B.*, No. 03-1638, 2004 WL 434008, at *2 (Iowa Ct. App. Mar. 10, 2004).  And similarly, the jury could conclude the knife was capable of inflicting death when designed as used.  *See, e.g., State v. Gonzalez*, No 19-0775, 2021 WL 2452040, at *2 (Iowa Ct. App. July 7, 2021) (concluding substantial evidence supported determination that "hunting knife" with a blade that was "[a]pproximately 2 to 3 inches" was capable of inflicting death when used as designed).

Because there is substantial evidence that the knife in question was a dangerous weapon, we affirm Woods's convictions.

**II. Conclusion.**

The district court did not err or abuse its discretion in refusing to give Woods's requested "dangerous weapon" instruction and instead giving the model instruction. And substantial evidence supports the jury's determination that the knife in question was a dangerous weapon, so we affirm Woods's convictions.

**AFFIRMED.**