Ruffin, C. J.
 

 The motion to quash the indictment was, in the opinion of this court, properly refused. For, although it may not sufficiently charge the keeping of a bawdy house, yet it is good, at least, as an indictment for keeping a disorderly house; and, if it sufficiently charge any offence, it cannot be quashed; as an indictment for a disorderly house, it substantially agrees with the precedents. Cro. Cir. Com. 302, 2 Chitty’s Crim. Law, 40. The language of the indictment is, that 'the defendant “ did keep and maintain a certain ill-governed and disorderly house, and in said house did procure and permit persons of lewd conversation and demeanor to frequent and come together and there to remain, drinking, whoring, cursing, swearing and misbehaving. Now, although the averment as to whoring may be inapt, because the indictment does not state, that the parties, of whom the whoring is predicated, were of both sexes, yet that cannot impair the force of the other averments, that the defendant procured and permitted divers persons, though of but one sex, of lewed conversation to frequent and remain in her ill-governed and disorderly» house, drinking, cursing, swearing and misbehaving,
 
 ad commune nodumentum. Rex
 
 v. Higginson, 2 Bur. 1232.— Hence the indictment ought not to have been quashed; and the case was properly put to the jury, on the proof that might be offered of the offence thus charged.
 

 But, as an indictment for a bawdy house, properly speaking
 
 *607
 
 —and in that light alone it seems to have been regarded in the Superior Court — it is, we think, deíeetive. A bawdy house is defined to be, a house of ill fame, kept for the resort and convenience of lewd people of both sexes. The residence of an unchaste woman — a single prostitute — does not become a bawdy house, because she may habitually admit one or many men to an illicit cohabitation with her. The common law did not undertake the correction of morals in such cases, but left the parties to spiritual supervision and penances. No doubt, however, in such cases our Act of 1805, Rev. St. ch. 34, sec. 46, would be applicable, if the criminal conversation was such as to amount! tó cohabitation. But a bawdy house was of criminal cognizance at common-law upon different principles; which were, that the public peace was endangered by drawing together crowds of dissolute, debauched and quarrelsome persons, and, also, that the morals of the people were corrupted by the open profession of lewdness. 1 Hawk. P. C. ch. 74. A bawdy house is not the habitation of one lewd ■ woman, but the common habitation of prostitutes — a brothel. That such is the just notion of this offence is very clear from
 
 Pierson's
 
 case 1 Salk. 382, 2 Lord Ray 1197. It was there held, that an indictment will not lie for being a bawd and unlawfully procuring evil disposed men and women to meet and commit whoredom and fornication ; for it is but a solicitation of chastity; and, like a want of chastity in any individual, was a spiritual offence; and the indictment should have been for keeping a common bawdy house, which is there described as an offence committed by one, who has a house or a room,
 
 and therewith accommodates and entertains lewd people to perpetrate acts of uncleanness
 
 — plainly meaning, acts between the persons thus entertained. Hence in the precedent .given by Mr.Chitty, 2 Crim. Law 40, which he. says is that in common use, the house is laid to be “a common bawdy house and it is averred that “ in the said house for lucre and gain, divers evil disposed persons, as well men as women, and whores, there unlawfully and wickedly did receive and entertain, and in which said house the said evil disposed persons
 
 *608
 
 and whores by the consent and procurement of the said &c. on &c., then did commit whoredom and fornication, whereby divers unlawful assemblies, riots, affrays &c., and dreadful fil- ^ an(j |0W(j 0g-ences were committed, to the common nuisance &c.” It is true, that in the form found, for instance, in Archibald’s’ Crim. Pk. 481, the house is not, as in Chitty, described as “a bawdy house” “
 
 eo nomine'1;
 
 yet all the constituents of the oIFence in other respects are specially averred, according to the definition of the oifence already given and Chitty’s precedent.
 

 The foregoing observations have been made, for the sake of a clearer understanding of the points, on which the case turned, on the trial before the jury. It was not pretended that the defendant’s house was disorderly, as a .tippling or common gaming house, or from noisy and riotous assemblies, or otherwise than as a place, in which the defendant received men info her own bed. In fact every witness disproves any noise or disturbance in the defendant’s room. It is not, therefore, what is called a disorderly house, according to this evidence. Neither was it charged in the indictment, nor proved upon .the trial, to be a bawdy house, in the legal sense of that term. No female of any character, chaste or lewd, had been admitted into her room, as far as appears. Some women of ill-fame had been seen, upon a public occasion, at the window of a passage, common to all the lodgers ; but not invited nor entertained by the defendant. Indeed, his Honor distinctly put the defendant’s guilt, as the keeper of a bawdy house, upon her own personal prostitution, provided only that it was common and habitual with her; in which there was error, as we think. That is sufficient for the defendant on this occasion. We must own, though, for any thing that we can discover in the testimony, there was no evidence of persona] impurity in the de* fendant herself. There is not a word said in disparagement of the reputation for chastity of the defendant, nor derogatory to the morals of her visitors, whose ages, stations in life, condition in respect to being or not being married, or the like, do not. appear. All that is stated is, that this female was tempo
 
 *609
 
 rarily separated from her husband, and that she lived quietly and retired in hired lodgings, where she was occasionally visited in day and of evenings, by male persons, for aught we know, of the.best standing. In all this, we see nothing that is-not quite consistent with innocence of life ; and, therefore, whatever may be the fact, we cannot but think that the jury should have been told, that there was no evidence of the crime of adultery being committed by the defendant. At all events, she was not guilty of the offence of keeping a bawdy house, or a disorderly house ; and, therefore, the judgment must be reversed, and a
 
 venire de novo
 
 awarded.
 

 Wo notice, that, alter the verdict and the refusal of the Court to set it aside, the judgment was arrested on the motion of the defendant, and the case comes up ou the appeal of the Solicitor for the State. But the objections, arising on the proceedings at the trial, naturally present themselves firsthand the counsel for the defendant has insisted on them primarily; and as we think there was error in these proceedings, we have felt bound to take such a course, as will free the defendant from the conviction, and, therefore, the question of the sufficiency of the indictment,- on the motion to arrest, does not present itself to us.
 

 Per Curiam,
 
 Venire de novo
 
 awarded.