## COMMONWEALTH *vs.* JOHN COOK.

The *St.* of 1845, *c.* 216, prescribing the punishment for fraudulently and deceitfully enticing or taking away an unmarried woman for the purpose of prostitution, does not apply to a case of a man's enticing such woman to leave her place of abode, for the sole pursose of illicit sexual intercourse with him.

THE defendant was indicted on *St.* 1845, *c.* 216, § 1, which enacts that " any person, who shall fraudulently and deceitfully entice or take away any unmarried woman, of a chaste life and conversation, from her father's house, or wherever else she may be found, for the purpose of prostitution, at a house of ill fame, assignation, or elsewhere," &c. " shall be punished," &c. The trial was in the court of common pleas, before *Wells,* C. J. whose report thereof was in substance as follows :

The evidence tended to prove, among other things, that from November 1844 to September 1845, the defendant and Emily Forrest (the female whom the indictment charged the defendant with enticing away) lived in the same house ; she being seventeen years old, and residing in her father's family, and the defendant occupying another part of the house; that Emily, during this period, lived sometimes in the family of the defendant, assisting in the work of the family when the defendant's wife was sick ; that while she was so in his family, and

afterwards, he attempted to seduce her, and persuade her to go away with him; that he endeavored to make her discontented with her parents and dissatisfied with being under their charge; that she finally consented to go off and live with him, under a promise from him that she should not live with him as his wife, and that her chastity should never be violated with-.out her consent ; that she left home voluntarily, and that the defendant never exercised over her any coercion or restraint ; that they went to Philadelphia, where he hired a single room, with only one bed in it, and that they remained there nine days, sleeping in the same bed; that he repeatedly solicited her chastity, was angry with her for not yielding, and twice pushed her out of bed, and once pinched her arm, to punish her for not complying.

The counsel for the defendant contended that by the term " prostitution," in *St.* 1845, *c.* 216, was meant not only illicit intercourse and cohabitation with a single individual, but an intercourse, on the part of the female abducted, with many individuals, or common prostitution ; that the statute offence could not be committed by an individual's fraudulently and deceitfully enticing or taking away a female, for the purpose of living with her in a state of illicit intercourse ; such being merely a purpose of seduction, and not the purpose contemplated by the statute. But the court ruled, among other things, " that if the design of the defendant was to take the person abducted to some place for the purpose of there living with her in a state of illicit intercourse, such conduct was a violation of the statute, although he had no purpose of caus-ing or inducing her to have illicit intercourse with any one else." The jury found the defendant guilty, and he alleged exceptions to the ruling of the court.

*Hallett,* for the defendant.

*Wilkinson,* (District Attorney,) for the Commonwealth

DEWEY, J. We are called upon to give a legal construction to the *St.* of 1845, *c.* 216, upon questions reserved in a case presenting painful details of grossly immoral acts, and open violations of the divine law. Such cases are not the

most favorable for a dispassionate consideration of questions of law, the decision of which involves the question whether the party shall be punished, or be discharged as not guilty of any offence cognizable by our laws. But cases of gross immorality do, from time to time, occur, in which the court feel constrained to say that the acts complained of are not punishable criminally by any statute law of the commonwealth; and the inquiry, which meets us in the present case, involves precisely that point. Are the acts of the defendant punishable by the statute above mentioned? Dealing with the present case in its most aggravated aspect, supposing it may properly be inferred, from the evidence, that the defendant, by artful means, enticed Emily Forrest voluntarily to leave her father's dwelling, to accompany the defendant to another State, and to take up a temporary residence in such State, and the parties there to cohabit as husband and wife; yet all these facts, however offensive to our feelings, as christian moralists, if they had occurred prior to March 25th 1845, the date of the act "to punish abduction" would not have subjected the defendant to a conviction in Massachusetts, for the simple reason that the jurisdiction of the offence attaches elsewhere; the crime would have been committed in the State where the parties cohabited as husband and wife, and would be punishable under the laws of such State. The question, therefore, in the present case, is not one touching the guilt of the defendant in New York or Pennsylvania, where he cohabited with this female, or whether he may not be indicted and convicted there for the crime of adultery; but simply whether his acts within the Commonwealth are of such a character as subject him to punishment here. The defendant is not charged with any acts of adultery with Emily Forrest within this Commonwealth. The extent of the charge is, that he fraudulently and deceitfully enticed her away from her father's house, for the purpose of illicit intercourse with her in another State; and the extent of the finding of the jury, under the ruling of the court, must be taken to be, that the defendant fraudulently and deceitfully enticed

her away from her father's house for the purpose of having personal sexual intercourse with her in such other State. This brings us to the great question in this case, that of the construction of the *St.* of 1845, *c.* 216. Was it intended to embrace the offence of enticing away an unmarried female, for the sole purpose of illicit intercourse with the individual thus enticing her away ; or is the offence, which is made punishable by this statute, the fraudulent enticing away of females for the more gross and aggravated crime of common prostitution, and especially the procuring of females for houses of ill fame, or acting as agent and servant of others in enticing females to meet such other persons at houses of assignation? The cases are certainly distinguishable in their character and degrees of moral turpitude. Whether the legislature intended to embrace all these classes of offences, including cases of mere seduction, is a question certainly not free from difficulty.

We are aware of the strong and deep feeling which has pervaded this community upon this general subject, as manifested by the numerous petitions which have, from time to time, been presented to the legislature, praying for further legislation to punish the crime of seduction. We know from the journals of the legislative branches, that bills have been introduced, punishing with heavy penalties the offence of seduction. But such bills have not as yet been sanctioned by legislative adoption, so far as to have become statute enactments. Difficulties have suggested themselves in the attempt to legislate upon the subject of seduction, which have induced the legislature to postpone the enactment of such bills; and the result has been, that our legislature has gone no further than the enactment of the *St.* of 1845, *c.* 216, now the subject of consideration.

It hardly need be said, that in construing a statute creating a new criminal offence, and enacting heavy penalties by way of punishment, a strict construction should be adopted. The court can go no further than the legislature have gone. If, in the use of terms defining an offence, the legislature have used language indicating a particular species of immorality

the court can only give a like effect to such words. The offence created by the statute is that of fraudulently and deceitfully enticing and taking away an unmarried woman from her father's house "for the purpose of prostitution at a house of ill fame, assignation or elsewhere." What is the meaning of the term "prostitution"? We cannot here, as in many other cases where crimes are made punishable by statute, and yet left undefined by such statute, have recourse to the well known common law definitions of such crimes, for the exposition of the character of the offence thus made punishable by a legislative act. No such legal definitions of the term "prostitution" are to be found; offences of this nature not being the subject of punishment by the common law tribunals. We must, therefore, resort to the definitions of lexicographers of the best authority as our guide. If we refer to Walker's Dictionary, we find prostitution defined "the act of setting to sale;" "the life of a public strumpet." A prostitute is defined "a hireling; a mercenary; one who is set to sale; a public strumpet." Johnson defines a prostitute "a public strumpet; a hireling." To prostitute, "to expose upon vile terms." In Webster's Dictionary, prostitution is "the act or practice of offering the body to an indiscriminate intercourse with men." Prostitute is "a female given to indiscriminate lewdness; a strumpet." Prostituting is "offering to indiscriminate lewdness." These definitions, it will be seen, all apply to prostitution the act of permitting illicit intercourse for hire, an indiscriminate intercourse, or what is deemed public prostitution. That such is the meaning of the term "prostitution" is strongly confirmed by the case of *Commonwealth* v. *Harrington*, 3 Pick. 26. In that case an indictment was sustained against a party who was alleged to have leased a house to one B., with the intent that the business of prostitution should be carried on there. The case throughout assumes that prostitution means common indiscriminate sexual intercourse, in distinction from sexual intercourse confined exclusively to one individual. It is true, as stated by the counsel for the government, that the term "prostitution"

has been sometimes used in a more loose and general sense, and that instances of such use of the word may be found in reports of judicial decisions. 1 W. Bl. 519. 3 Bur. 1569. 13 S. & R. 32. But we are rather to inquire what is the appropriate and well authorized meaning of the term, and to assume that the legislature, in using the term in describing the offence created by this statute, intended to use the word in its proper acceptation. We cannot, therefore, give to the word "prostitution" the broad and extensive application contended for on the part of the government. Such a construction of the statute would, to some considerable extent, make it applicable to cases where the real offence is seduction.

The court are of opinion, that the offence made punishable by this statute is something beyond that of merely procuring a female to leave her father's house for the sole purpose of illicit sexual intercourse with the individual thus soliciting her to accompany him ; that she must be enticed away with the view, and for the purpose, of placing her in a house of ill fame, place of assignation, or elsewhere, to become a prostitute, in the more full and exact sense of that term ; that she must be placed there for common and indiscriminate sexual intercourse with men ; or, at least, that she must be enticed away for the purpose of sexual intercourse by others than the party who thus entices her ; and that a mere enticing away of a female, for a personal sexual intercourse, will not subject the offender to the penalties of this statute.

This decision, while in one respect it narrows the application of the statute, and excludes cases of mere seduction, or illicit intercourse with the individual enticing, leaves a large application of it to cases of a more aggravated character, and will embrace all of either sex who shall fraudulently entice away females for the purpose of supplying brothels and houses of ill fame, or with a view to induce them to prostitute their persons for money or hire.

As the view we have taken of this statute differs from that taken at the trial, the exceptions are sustained, and the verdict set aside.