Moncure P.
delivered the opinion of the court.
This is an appeal from a decree in favor of infants, suing by their next friend, against the personal representative of their guardian, to recover a balance claimed to be due them on the guardianship account. The defence relied on is, that the money due by the guardian to the wards was by him duly invested in Confederate bonds in pursuance of the act of the General Assembly of Virginia passed on the 5th day of March 1863; Acts of Assembly, 1862 and 1863, page 81. It is contended that the defence is unsustainable, on two grounds: 1st, that it does not sufficiently appear that any investment was in fact made by the guardian of the money due by him to the wards, or any part thereof in Confederate bonds; and if any such investment was in fact made, 2dly, that it was not made in pursuance of the terms and provisions of the said act, which does not therefore absolve the guardian ■and his estate from liability for the said money.
1st. Was any investment made by the guardian of the ward’s money in Confederate bonds ?
The representative of the guardian in his answer states, he is “ informed, and believes, that about the year 1863 the said Y. C. Ammon (the guardian), in pursuance of an act of the general assembly passed March 5th, 1863, entitled an act authorizing fiduciaries to invest funds in their hands in certain cases, and for other purposes, did invest $3,500 of the amount in his hands in seven five hundred dollar seven per cent. Confederate bonds, which said bonds were preserved by said Ammon as the property of his said wards up to *624 the time of his death (in 1866 or ’7), and were found this respondent after his administration, among the-papers of said Ammon, with the indorsement that now aPPears ou each:—“ Wolfe’s heirs $500,” made in the handwriting of said Ammon. “ (The wards being two-of said heirs.) These bonds are herewith filed, marked exhibit £XX,’ and asked to be taken and read as part of this answer. This respondent has always been willing to, and has tendered to the complainants through their attorney the said bonds in discharge of that much of the amount due them; but such tender has-been rejected. This respondent claims that his intestate is entitled to credit for the amount of said bonds.”' These bonds bear date on the 13th of February 1863, and appear to have been obtained by X. C. Ammon on the 2d of March 1863, before the date of the act of assembly aforesaid. They are payable to him individually, and not as guardian of the complainants. They are the same in form with a large amount of other Confederate bonds issued during the war, and found also by the said administrator among the papers of his intestate, and claimed to be the property of the said intestate. The endorsement, ££ Wolfe’s heirs $500,” made by said Ammon on each of the seven bonds of that amount as aforesaid, may have been made, so far as appears from the record, long after the bonds were issued, and even long after the war, as the guardian did not die until 1866 or ’7; and it is of course not evidence that the ward’s money was invested in the said bonds. The guardian was first deputy sheriff, and then sheriff of Eockingham county, from January 1857 to January 1865; and he was probably, during that period, largely engaged in speculations, which his office afforded him an opportunity of making. The guardian’s administrator in *625 his deposition, states his belief that the sheriffs of said county and their deputies had been in the habit of shaving executions placed in their hands for collec tion, and that the office was regarded desirable by some persons on that account. The guardian seems to have amassed a large amount of Confederate ney, as he invested a large amount of it in Confederate bonds on his own account.
If the seven bonds of $500 each, endorsed as aforesaid, had been obtained for money invested for the wards, the presumption is, they would have been payable to the guardian as such, so as to show on their face that they were given for the ward’s money. This would have been proper, whether the investment was made in pursuance of the act of the 5th of March 1863 aforesaid, or under a decree of a court of chancery in the exercise of its ordinary jurisdiction, or by the guardian making the investment On his own responsibility, without any decree or order of court for the purpose. There was an express provision in the said act that “the bonds, when practicable, shall be taken in the name of such fiduciary or trustee in his fiduciary character. By taking them in the guardian’s own individual name it would have been in his power to claim them as his own individual property if Confederate bonds had appreciated, instead of becoming, as they did, of no value.
There is evidence in the cause tending to show that the guardian applied to the Circuit court of the said county for authority to invest the money belonging to his wards, and that such authority was accordingly given. But such evidence is insufficient to prove even that such authority was given or applied for, much less to prove that such an investment, even if authorized, was ever actually made. It appears from the evidence *626 that a portion of the records of said court was destroyed by the Federal troops in June 1864; and if any order for the investment had been made by the said court or the judges thereof, it may possibly have been destroyed in that way. But it is probable if such an order had been made, that its importance to the guardian would have induced him to obtain a copy of the order and keep it with the bonds, especially as they were payable to himself individually, or, at least, did not show on their face that they were for the money of the wards.
The court is therefore of opinion, that it does not sufficiently appear that any investment was in fact made by the guardian of the money due by him to the wards, or any part thereof, in Confederate bonds. But if any such investment was in fact made, then,
2ndly, was it made in pursuance of the terms and provisions of the said act of assembly of the 5th of March 1863? and does that act therefore absolve the guardian and his estate from liability for the said money?
In Campbell’s ex’ors v. Campbell’s ex’or, 22 Gratt. 649, 684, and in Crickard’s ex’or v. Crickard’s legatees, 25 Gratt. 410, 421, it was held by this court, that “to authorize investments under the act of March 5th, 1863, three conditions must concur: 1st, the money must be in the hands of the fiduciary; 2nd, it must have been received in the due exercise of his trust; 3rd, for some cause, he must be unable to pay it over to the parties entitled. If they do not all exist, the order of the court or judge purporting to authorize such investment is null, and the fiduciary is responsible for the money.” If any of these conditions existed in this case, which is not admitted, we think the first and second certainly did not. The money wa's not in the *627 hands of the guardian when Confederate bonds were taken by him; and if it was, it had not been received in the due exercise of his trust. The estates of the wards consisted of their distributive portions of their father’s estate, real and personal, who died several years before the war. That estate had been converted into money before the war, and the distributive portions of the wards were due to them in money, and constituted ante war debts which were perfectly secure. The guardian before the war received a large part of the money thus due to his wards, and thereby became himself debtor to them in the amounts so received. That debt, as well as the debts for the residue of the ward’s estate remaining unpaid at the commencement of the war, were good, ante war, specie debts, which the guardian had no right to collect in depreciated Confederate currency, and no right to convert into Confederate bonds in March 1863, when Confederate money was greatly depreciated in value, and was still depreciating. There was no necessity for collecting these debts, their collection not being required for the support of the wards, not as much as the accruing interest on said debts having been applied to that purpose, and the money, as before stated, being perfectly secure. A large portion of the money was actually due by the guardian before the war, and all of it might have been well and safely invested by him for his wards. Instead of that, it does not appear that he said anything about making an investment for them until March 1863, when it is contended, but not proved, that he made the aforesaid investment for them in Confederate bonds. It would have been a breach of trust and a waste of his ward’s estate for him to have done so. As to the Confederate bonds amounting to seven hundred dollars which appear to have been received by *628 the guardian of Thos. K. Miller on the 28th of April 1862, in part payment of the purchase money of land sold to Miller before the war, the guardian ought not to have received such payment in that medium. But it does not appear that he held or claimed to hold those bonds as an investment for the benefit of his wards, and he no doubt converted and applied them to his own use, as he only claimed to have made an investment in Confederate bonds on account of his wards in March 1863.
The court is therefore of opinion, that even if such an investment was in fact made as claimed by the guardian on account of the wards, it was not made in pursuance of the terms and provisions of the said act of assembly of the 5th of March 1863, and the said act does not absolve the guardian or his estate from liability for the money so claimed to have been invested.
Whether the Circuit court erred or not in scaling the sum of $277.14 received by the guardian for each of the wards on the 28th of April 1862, being received in payment of an ante war debt, is a question which this court need not, and therefore does not, decide. The appellees complain of no such error, and the appellant cannot, as it is certainly not one to his prejudice.
The decree appealed from, though rendered at the spring term 1873 of the said Circuit court, was, by inadvertence, not then entered of record, and was after-wards, to wit: on the 26th day of September 1873 ordered to be spread upon the record at that term, to have the same effect, in all respects, as if entered at the said spring term 1873; and it was accordingly so entered of record, though it professes on its face to be a decree of the 26th day of September 1873. After *629 the said decree was so rendered, though not entered at the spring term 1873 as aforesaid, the cause came on again to be heard during the same time, to wit: on the 7th day of May 1873, when it was decreed “that the ■decree entered in this cause during the present term” , . , , "i • n , being the decree rendered, but by inadvertence not entered of record at the spring term 1873 as aforesaid, “ascertaining the liability of the estate of T. O. Ammon, deceased, to the plaintiffs, be, and the same is hereby, so far modified as not to charge said estate with compound interest on the amounts due the plaintiffs from and after the death of the said T. C. Ammon, and the cause is recommitted to a master commissioner to report the amount due the plaintiffs after making the deduction aforesaid.” Afterwards, to wit: on the 26th day of September 1873, when the said decree rendered, but by inadvertence not entered of record at the spring term of that year, was ordered to be spread upon the records as aforesaid, no notice was taken of the said decree of the 7th day of May 1873, modifying the decree previously rendered during the same time as aforesaid. And in the copy of the record which was brought up on the petition for an appeal and supersedeas in this case, the said decree of the 7th day of May 1873 was accidentally omitted. But a copy of that decree has been since supplied, and by an endorsement thereon signed by the counsel in this case, ithas been agreed that the same shall be read in its proper place as a part of the record of the case, which has accordingly been done.
The court is therefore of opinion, that the decree appealed from should be so amended as to be modified according to the said decree of the 7th day of May 1873; that there is no error in the said decree so *630 amended, at least to the prejudice of the appellant,. and that the same ought to be affirmed.
The decree was as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid, and the-arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the decree appealed from in this case, being the said decree of' the 26th day of September 1873, ought to be so amended as to be modified according to the decree made in this cause on the 7th day of May 1873, of" which latter decree an official copy, by consent of the parties by counsel, has been made a part of the record in this cause, and accordingly so considered by this court, that there is no error in the said decree-appealed from, amended as aforesaid, at least to the prejudice of the appellant, and the same ought to be affirmed.
Therefore it is decreed and ordered that the said decree appealed from he amended as aforesaid, and as so amended be affirmed, and that the appellant, out of the estate of his said intestate, Y. C. Ammon, pay to the appellees thirty dollars damages and their costs by them about their defence in this behalf expended.. And it is further decreed and ordered that this cause be remanded to the said Circuit court for further proceedings to be had therein in conformity with the-foregoing opinion and decree, which is ordered to be certified to the said Circuit court of Rockingham, county.
Decree amended and aeeirmed.