535 A.2d 445

**Lewis D. PROUT**

v.

**STATE of Maryland.**

**No. 131, Sept. Term, 1985.**

Court of Appeals of Maryland.

Jan. 7, 1988.

Eldridge, J., filed a concurring opinion in which Smith, J., retired, joined.

McAuliffe, J., filed an opinion dissenting in part in which Murphy, C.J., joined.

Gary S. Offutt, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief) Baltimore, for appellant.

Valerie W. Loftin, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH *,
ELDRIDGE, COLE, RODOWSKY, COUCH * and
McAULIFFE, JJ.

COLE, Judge.

In this case we are asked to decide several important
questions: (1) whether a motion *in limine*, under the cir-
cumstances presented, is sufficient, in and of itself, to
preserve the issues raised therein for appellate review; and
(2) whether the trial court erred in refusing to admit a
witness's prostitution and solicitation for prostitution (solici-
tation) convictions for impeachment purposes. Further-
more, if both of these questions are answered in the affirm-
ative, we are asked to decide whether the trial court's
refusal to allow the defendant to cross-examine the State's
principal witness regarding her prior convictions for prosti-
tution and solicitation was harmless error.

The parties have stipulated to the following facts. Lewis
D. Prout was charged with assault and robbery with a
deadly weapon in the Circuit Court for Baltimore City.
After the jury was selected, but before counsel made their
opening statements, Prout's counsel made an oral motion *in
limine* to "advise the court" of his intention to cross-exam-
ine the complainant, the State's sole witness, regarding her
prior convictions. Prout's counsel read the following con-
victions from the complainant's record: grand theft in May
1980; shoplifting under $300 in July 1980; prostitution in
December 1980; failure to appear in court in January 1981;
solicitation for prostitution and resisting arrest in June
1981; solicitation in August 1981; violation of probation in
September 1981; contempt of court in August 1982; and
solicitation in October, 1983. Prout's counsel also stated:

    Now, I am aware of the law which states that ...
    convictions of infamous crimes and crimes involving mor-

---

* Smith and Couch, JJ., now retired, participated in the hearing and
conference of this case while active members of this Court; after
being recalled pursuant to the Constitution, Article IV, Section 3A,
they also participated in the decision and adoption of this case.

al turpitude are proper subject[s] for cross-examination of a defendant and/or a witness. But I would suggest to the Court that, as the ... Court of Special Appeals said in *Burrell v. State*, 42 Md.App. [130, 399 A.2d 1354 (1979)] it is basically discretionary with the trial judge as to what extent he would allow the cross-examination [with] convictions other than ... felonies and crimes involving moral turpitude, and heinous crimes. And they set forth some guidelines there which I believe the court can consider in this case ... [T]hat is, ... [is] the cross-examination ... concerning these convictions done only for the purpose of embarrassing and harassing the witness or is it being done because it has relevancy as to the matter before the court.

The State objected to Prout's motion *in limine* on the ground that there was nothing in the complainant's record to indicate that the offenses listed therein resulted in convictions. Accordingly, the trial judge asked Prout's counsel which of the aforementioned offenses resulted in actual convictions. When defense counsel indicated that he was uncertain, the trial judge stated that, "for purposes of [their] discussion," he would "assume ... everything that [defense counsel] read ended up in convictions." The State protested the trial judge's conclusion on the ground that defense counsel had "the burden of producing some documentation" of the convictions and the following colloquy ensued:

THE COURT: Do you agree [that] the theft and shoplifting incident[s] did result [in] convictions for those purposes?

[STATE'S COUNSEL]: No, your honor.

THE COURT: Not even the theft or shop lifting?

[STATE' COUNSEL]: No, your honor.

THE COURT: Call the witness.

. . . .

While we are awaiting those witnesses to verify those convictions or lack thereof, in the exercise of my discretion, I will not permit any evidence for impeachment

purposes [of] any prior convictions of the witnesses for solicitation, prostitution, failure to appear, resisting arrest, violation of probation, contempt of court, and failing to obey a court order, and possession of heroin. None of those crimes in my view effect [sic] the credibility or believeability of a witness. Since the admission of those prior convictions into evidence is discretionary with the trial judge, I will exercise my discretion by not allowing those into evidence for impeachment purposes.

. . . .

If it turns out that this woman has been convicted of theft and shoplifting [defense counsel], then on cross-examination when you ask her about her prior convictions, do not ask her what she has been convicted of. Lead her and say, "Is it not true that you have been convicted of theft and shoplifting?" *et cetera,* so ... we will not inadvertently get into the other inadmissible convictions.
[DEFENSE COUNSEL]: Thank you your honor. May I just protect the record and take exception to the court's ruling.
THE COURT: You have it automatically.

At trial, pursuant to the court's instruction, defense counsel cross-examined the witness by asking her leading questions about her grand theft and shoplifting convictions. Defense counsel neither proffered nor mentioned the witness's prostitution and solicitation convictions. The jury found Prout guilty of assault and he appealed his conviction to the Court of Special Appeals. The intermediate appellate court affirmed in an unreported per curiam opinion. *Prout v. State,* No. 79, September Term, 1985, filed September 23, 1985. Both Prout and the State petitioned this Court for writs of certiorari, which we granted to review the important questions presented.

On appeal, the State argues that Prout failed to preserve his objection to the trial court's ruling on his motion *in limine,* which excluded the witness's prostitution and solicitation convictions. The State contends that Maryland Rule 4–322(a), which requires a party to object to the admission

of evidence at the time it is offered, applies to the facts *sub judice* and, thus, that Prout needed to make a subsequent proffer of the convictions at the point at which he would have offered them at trial.[1] Prout, on the other hand, argues that the trial court's ruling on his motion *in limine* was alone sufficient to preserve the issue of the admissibility of the complainant's convictions for appeal. Prout contends that subsection (c) of Maryland Rule 4–322, rather than subsection (a), is the applicable rule for determining when an objection to a trial court's ruling *excluding* evidence has been preserved for appeal.[2] Prout further contends that he has satisfied the provisions of subsection (c).

---

1. Maryland Rule 4–322(a) provides:

   (a) *Objections to Evidence.*—An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived. The grounds for the objection need not be stated unless the court, at the request of a party or on its own initiative, so directs. The court shall rule upon the objection promptly. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court may admit the evidence subject to the introduction of additional evidence sufficient to support a finding of the fulfillment of the condition. The objection is waived unless, at some time before final argument in a jury trial or before the entry of judgment in a court trial, the objecting party moves to strike the evidence on the ground that the condition was not fulfilled.

   We also note that Rule 2–517 (applicable to civil proceedings in the circuit courts) and Rule 3–517 (applicable to civil proceedings in the district courts) are textually identical to Rule 4–322 (applicable only to criminal proceedings).

2. Maryland Rule 4–322(c) and (d) provide:

   (c) *Objections to Other Rulings or Orders.*—For purposes of review by the trial court or on appeal of any other ruling or order, it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court. The grounds for the objection need not be stated unless these rules expressly provide otherwise or the court so directs. If a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection at that time does not constitute a waiver of the objection.

   (d) *Formal Exceptions Unnecessary.*—A formal exception to a ruling or order of the court is not necessary.

Prout also argues that the trial court erred in excluding the complainant's prostitution and solicitation convictions for impeachment purposes. Prout maintains that, because the crimes fall within the class of offense "involving moral turpitude," the trial judge was without discretion to exclude them under this Court's previous cases. The State contends that Prout has already conceded, in his motion *in limine*, that prostitution and solicitation are not crimes of moral turpitude and, even if not conceded, they are not crimes of moral turpitude. In the alternative, the State maintains that if the complainant's prostitution and solicitation convictions should have been admitted for impeachment purposes, the trial court's refusal to do so was harmless. Prout posits three reasons why the trial court's error is harmful. First, the exclusion of evidence offered to impeach the State's sole witness cannot be deemed harmless in a case where the jury's inconsistent findings indicate that the jury questioned the witness's credibility even in the absence of the proffered convictions;[3] second, the witness's prostitution and solicitation convictions would not be merely cumulative; and, third, because "different crimes may be relevant to credibility in different ways," the witness's prostitution and solicitation convictions should be admitted due to their distinctive nature.

Whether a trial judge's ruling granting a motion *in limine*[4] may be reviewed on appeal when there is no subsequent proffer of the evidence at trial presents a

---

**3.** Prout finds it inconsistent that the jury acquitted him of robbery of the complainant's companion but found him guilty of assaulting the complainant, when both charges arose out of the same transaction. We express no opinion with regard to whether the charges are inconsistent.

**4.** Prout's motion *in limine* differed from the ordinary motion *in limine* because the motion asked the court to admit, rather than exclude evidence. Thus, the court's *denial* of Prout's motion *in limine* had the same effect as the *grant* of a traditional motion *in limine,* i.e., to exclude the proffered evidence. Accordingly, we will treat the trial judge's ruling on Prout's motion *in limine* as if it were a grant of a motion to exclude.

question of first impression in this Court. Typically, a motion *in limine* is a motion made before or during a jury trial outside of the hearing of the jury, the purpose of which is to prevent the jury from hearing certain questions and statements that are allegedly prejudicial to the movant. Specifically, the motion usually seeks an order restricting opposing counsel from offering questionable evidence before the judge has had an opportunity to rule on its admissibility. Evidence is most often sought to be excluded because it is incompetent, irrelevant, immaterial, privileged, or otherwise inadmissible. *See generally McCormick on Evidence* § 52, at 128 (E. Cleary 3d ed. 1984). Thus, the real purpose of a motion *in limine* is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably infect the fairness of the trial.

Obviously, the trial judge may either grant or deny the motion. If the trial judge admits the questionable evidence, the party who made the motion ordinarily must object at the time the evidence is actually offered to preserve his objection for appellate review. However, when the trial judge resolves these motions by clearly determining that the questionable evidence will *not* be admitted, and by instructing counsel not to proffer the evidence again during trial, the proponent of the evidence is left with nothing to do at trial but follow the court's instructions. Under these circumstances, the court's ruling controls the subsequent course of the trial and the proponent's objection is preserved for review without any further action on his part.

The State, however, insists that Maryland Rule 4–322(a) requires that a party make a subsequent proffer or objection when his evidence is excluded. Rule 4–322(a) provides that "[a]n objection to the *admission* of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise the objection is waived." As we see it, Rule

4–322(a) is inapplicable when a trial judge rules to exclude evidence. Moreover, subsection (c) of Rule 4–322 states that to preserve an objection to a "ruling or order" *other than one admitting evidence,* "it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court." [5] Thus, when a trial judge, in response to a motion *in limine,* makes a ruling to exclude evidence that is clearly intended to be the final word on the matter, and that will not be affected by the manner in which the evidence unfolds at trial, and the proponent of the evidence makes a contemporaneous objection, his objection ordinarily is preserved under Rule 4–322(c).

We now turn to the facts of this case. The complainant was the sole prosecuting witness. Prior to trial, Prout's counsel made an oral motion *in limine* advising the court that he planned to challenge the witness's credibility by introducing her prior convictions into evidence. The State's Attorney argued that some of these convictions, namely prostitution and solicitation, had no bearing on credibility and were inadmissible under Maryland law. At that point in the proceedings, neither defense counsel nor the State's Attorney was prepared to offer documentation of the complainant's convictions. Nevertheless, the court assumed the validity of the convictions and ruled that the witness's prostitution and solicitation convictions were inadmissible for impeachment purposes because they were not relevant to her credibility. However, the trial judge did not stop here. He went a step further and specifically instructed

---

**5.** In this case, the trial court assumed the existence of the prior convictions for purposes of his ruling but ordered counsel to verify the same. The record does not reflect if counsel complied with the court's order. We presume that the trial court was apprised of the fact of their existence in light of the subsequent proceedings. Nevertheless, the better practice for the party affected is to enter proper documentation on the record so that the purpose of a possible remand on such issue cannot be thwarted. Because of the disposition we make in this case, the issue does not arise.

defense counsel not to ask the witness any questions about these prior convictions but, instead, to lead her with questions about her other convictions so as not to elicit her prostitution and solicitation convictions inadvertently.[6] It seems to us that the instruction to refrain from alluding to the witness's convictions for prostitution and solicitation was a final ruling limiting counsel's conduct on this issue throughout the entire trial. Accordingly, we find the issue of the admissibility of the witness's prior convictions preserved for our review.

We now turn to the question of whether the trial court erred when it refused to admit proof of the witness's prostitution and solicitation convictions for purposes of impeaching her trial testimony. Prout argues that the trial court had no discretion to exclude these convictions for impeachment purposes because prostitution and solicitation are crimes of moral turpitude and, as such, "must always be admitted for impeachment." The State, on the other hand, argues that the crimes of prostitution and solicitation encompass such a wide variety of behavior that they cause the factfinder to speculate as to the witness's prior conduct. Thus, the State contends, these crimes are inadmissible for impeachment purposes under our decision in *Ricketts v. State*, 291 Md. 701, 436 A.2d 906 (1981). Because we believe that these contentions reflect a growing need for clarification in the area of impeachment by prior conviction, we shall use this opportunity to reexamine and clarify Maryland law in this important area.

We begin our reexamination by tracing the roots of impeachment by prior conviction in Maryland. The General Assembly first spoke on this topic in Chapter 109 of the Acts of 1864. This statute has retained its original substance for well over 100 years and is now embodied in

---

6. Whether the trial court's summary exclusion of the witness's prior convictions as having no bearing on credibility also foreclosed inquiry as to whether the complaining witness and her companion were engaging in solicitation on the night in question is an issue counsel did not argue and we do not address.

Maryland Code (1974, 1984 Repl.Vol.), § 10–905 of the Courts and Judicial Proceedings Article. Section 10–905, in pertinent part, provides that "[e]vidence is admissible to prove the ... fact of [a witness's] conviction of an infamous crime." The legislative intent behind this statute is fairly clear. At common law, and prior to the time Maryland's impeachment statute was enacted, an individual convicted of an infamous crime was disqualified from testifying. When the General Assembly enacted Chapter 109 in 1864 it intended to remove this common law disqualification. *See In re Alexander*, 16 Md.App. 416, 418, 297 A.2d 301, 302 (1972) ("This impeachment rule itself arose in substantial amelioration of the former common law rule *barring* as a witness any person convicted of an infamous crime."); *see generally McCormick on Evidence* § 43, at 93 (E. Cleary 3d ed. 1984) ("At common law the conviction of a person of [an infamous crime] rendered the convicted person altogether incompetent as a witness.... By statutes or rules which are virtually universal in the common law world, this primitive absolutism has been abandoned and the disqualification for conviction of crime has been abrogated, and ... been reduced to a mere ground of impeachment of credibility.").

However, rather than allow these witnesses to testify free from the taint of their prior infamous convictions, the legislature chose to make these convictions admissible for impeachment purposes. Thus, a witness convicted of an infamous crime was no longer disqualified from testifying, but his testimony was subject to impeachment by his infamous conviction. In short, § 10–905's legislative history suggests that the convictions admissible for impeachment purposes under the statute are those that were infamous, and thereby rendered a person incompetent to testify, at common law.[7]

---

7. Even if we had no indication of the legislature's intent in enacting Chapter 109, we would still look to the common law meaning of "infamous crimes" in construing the statute because, "[t]he interpretation of well-defined words and phrases in the common law carries over to statutes dealing with the same or similar subject matter."

In *Garitee v. Bond,* 102 Md. 379, 383, 62 A. 631, 633 (1905), this Court set forth the crimes that the common law regarded as infamous: *"treason, felony, perjury, forgery* and those other offenses, classified generally as *crimen falsi."* . (Emphasis supplied). Several commentators are in agreement. Ginsberg and Ginsberg, *Criminal Law and Procedure in Maryland* 5 (1940) ("Infamous crimes in Maryland embrace treason, felonies, and those misdemeanors which are founded in fraud."); *McCormick on Evidence* § 43, at 93 (E. Cleary 3d ed. 1984) ("Treason or any felony, or ... a misdemeanor involving dishonesty (*crimen falsi*), or the obstruction of justice ... were said to be 'infamous crimes.' ").

■ Clearly then, the legislative purpose behind Maryland's impeachment statute requires that the crimes admissible *per se* under § 10–905 be limited to those crimes within the common law definition of "infamous." These crimes are the felonies and the *crimen falsi.* As we see it, the label "moral turpitude" serves no purpose in the context of § 10–905 other than serving as an adjective often used to describe infamous and non-infamous crimes that our society finds particularly repugnant. Thus, the phrase "moral turpitude" does not describe a class of crimes, separate and apart from infamous crimes admissible under § 10–905.

To illustrate, we will briefly review a few of our previous cases on impeachment by prior conviction. The first significant Maryland case to discuss the topic was *Nelson v. Seiler,* 154 Md. 63, 139 A. 564 (1927). In *Nelson,* the question was whether a defendant in a civil suit arising out of an automobile accident could be impeached with his prior convictions for violations of the motor vehicle law. The appellant argued that "only convictions for crimes involving moral turpitude reflect upon a witness' worthiness of belief, and evidence of lesser crimes is irrelevant." *Id.* at 68, 139 A. at 566. The appellant further argued that, even if the

Sutherland, *Statutory Construction* § 50.03, at 435 (N. Singer 4th ed. 1984).

convictions admissible for impeachment purposes were not limited to those involving moral turpitude, the court must make some distinction between lesser crimes relevant to credibility and those irrelevant to credibility. This Court agreed, and made the following statement:

It is not required that the evidence (of violations to impeach a witness) be restricted to infamous crimes *or those involving moral turpitude* on the one hand, but, on the other, the purpose of the admission, to impeach credibility, must impose some limits; the convictions should be of infringements of the law that may have some tendency to impeach credibility, and not all infringements do.

*Id.* at 69, 139 A. at 566. (Emphasis supplied).

This statement has been repeated countless times by Maryland appellate courts responding to the question of whether a particular crime was admissible for impeachment purposes. *See State v. Huston*, 281 Md. 455, 459, 379 A.2d 1027, 1029 (1977); *Cousins v. State*, 230 Md. 2, 4, 185 A.2d 488, 489 (1962); *Taylor v. State*, 226 Md. 561, 566, 174 A.2d 573, 575 (1961); *Linkins v. State*, 202 Md. 212, 220, 96 A.2d 246, 250 (1953); *Nesbit v. Cumberland Contracting Co.*, 196 Md. 36, 40, 75 A.2d 339, 340–41 (1950); *Hunter v. State*, 193 Md. 596, 605, 69 A.2d 505, 509 (1949); *Clawns v. State*, 179 Md. 644, 646, 22 A.2d 464, 466 (1941); *General Exchange Ins. Corp. v. Sherby*, 165 Md. 1, 3, 165 A. 809, 810 (1933); *Burgess v. State*, 161 Md. 162, 171, 155 A. 153, 157 (1931); *In re Alexander*, 16 Md.App. 416, 418, 297 A.2d 301, 302–303 (1972); *Gunther v. State*, 4 Md.App. 181, 184, 241 A.2d 907, 908 (1968); *Robinson v. State*, 4 Md.App. 515, 532, 243 A.2d 879, 890 (1968); *Huber v. State*, 2 Md.App. 245, 256–57, 234 A.2d 264, 271 (1967). Nevertheless, in none of these cases has the Court made any determination as to whether the proffered conviction was one of moral turpitude.

It was not until our decision in *Ricketts v. State*, 291 Md. 701, 436 A.2d 906 (1981), that we accorded any significance to the concept of moral turpitude in the context of impeach-

ment by prior conviction. In *Ricketts*, the trial court allowed the prosecutor to impeach Ricketts's testimony with his prior conviction for indecent exposure. On appeal to this Court, Ricketts argued that his indecent exposure conviction was inadmissible for impeachment purposes because under Maryland law, only infamous crimes, crimes of moral turpitude, and lesser crimes affecting the credibility of the witness are admissible for impeachment purposes. Ricketts contended that indecent exposure fits within none of these categories. The State argued that indecent exposure was a crime of moral turpitude and, as such, was admissible to impeach Ricketts's testimony.

We began our analysis in *Ricketts* by consulting § 10–905 and the previous Maryland cases on impeachment by prior conviction. We stated that "evidence of the accused's previous conviction of crime *need not be restricted to infamous crimes or those involving moral turpitude." Ricketts, supra* at 707, 436 A.2d at 909 (quoting *Cousins v. State,* 230 Md. 2, 185 A.2d 488 (1962)). We summarized the law as follows:

> [O]ur precedents dictate that if indecent exposure is an infamous crime or a crime of moral turpitude, as the State contends, it was admissible for purposes of impeachment. However, if it is a lesser crime, then its admissibility must be determined under a different standard.

*Id.* [291 Md.] at 708, 436 A.2d at 910.

In accord with this summary, we considered whether indecent exposure was *either* an infamous crime *or* a crime of moral turpitude and concluded that it was neither. Next, we looked to see whether, as a lesser crime, indecent exposure was relevant to credibility. We found that it was not.

However, in our effort to be thorough and responsive to the appellant's arguments in *Ricketts*, we made an independent determination that indecent exposure was not a crime of moral turpitude. In doing so, we grafted onto the

statute the concept of a crime of moral turpitude. Today, after reexamining the roots and history of Maryland's impeachment law, we conclude that the drafters of this legislation had no intention of creating a class of infamous crime known as a crime of moral turpitude. Thus, to the extent that our *Ricketts* analysis is inconsistent with this conclusion, we were incorrect. Nevertheless, our holding in *Ricketts* is still viable, *i.e.*, to be admissible for impeachment purposes, a lesser crime must be sufficiently specific to enable the factfinder "to make a reasoned judgment as to whether the offense affects the defendant's credibility; [if it is not,] it is inadmissible for purposes of impeachment." *Id.* at 714, 436 A.2d at 913.

■ While we believe it is difficult to draw distinct lines on what crimes may be used to impeach, we think the law of this state may be generally summarized as holding that to be admissible for impeachment purposes a conviction must be either a felony at common law or a *crimen falsi* and thus infamous, or a lesser crime bearing upon the witness's credibility. Stated another way, crimes, other than those that are infamous, whether misdemeanors or statutory felonies, fall into the class of lesser crimes and may or may not reflect on one's tendency to be truthful. The determination of whether and, if so, when such convictions may be admitted is left to the sound discretion of the trial judge. If the crime being offered to impeach says nothing about the likelihood of the witness's propensity to be truthful under oath, it is irrelevant on that issue and should not be admitted. If the prior conviction passes this relevancy test, then the trial court must determine if its probative value outweighs its prejudicial effect. In other words, because evidence is legally admissible does not necessarily require its admission. Only if the trial judge, in the exercise of his discretion, feels that the prior conviction rationally carries probative value on the issue of truth and veracity of the witness, should the evidence be admitted. Such exercise of discretion will be accorded every reason-

able presumption of correctness and will not be upset except in a clear case of abuse.

■ We do not intend to establish rigid guidelines to be followed by the trial judges in determining the admissibility of impeachment evidence. To do so would be contrary to our suggestion that the trial judge exercise a sound discretion in each case where the issue arises. However, we do suggest a number of factors that ought be considered by the trial court when addressing this problem. First, acts of deceit, fraud, cheating, or stealing are generally regarded as reflecting adversely on one's likelihood to be truthful, while acts of violence generally have little, if any, bearing on honesty and veracity. Second, a conviction for dishonesty, if followed by a long period of exemplary living, may be too remote to have significant probative value on the truth-telling process. Another important factor to remember is that a prior conviction which is similar to the crime for which the defendant is on trial may have a tendency to suggest to the jury that if the defendant did it before he probably did it this time. The above factors are by no means exhaustive and are only offered as examples of the kind of matters which the trial judge may consider in determining the consequence of admitting this kind of impeachment evidence.

In the case *sub judice,* the prior convictions related to prostitution and solicitation.[8] Maryland law defines prosti-

---

8. Prostitution was not an indictable offense at common law because it fell within the jurisdiction of the Ecclesiastical Court. *See Bailey v. United States,* 98 F.2d 306, 308 (D.C.Cir.1938) ("The reason why prostitution was not punishable in common law tribunals was that the statute of Circumspecte agatis, 13 Edw. I (2 Bac. Abr. Title 'Ecclesiastical Courts', D, p. 716, 727) forbade the judges of the common law courts to interfere with the Courts Christian in punishing the offenses of the incontinent."); *Toney v. State,* 60 Ala. 97, 98 (1877); *Commonwealth v. Cook,* 53 Mass. 93, 97 (1846); *People v. Cummons,* 56 Mich. 544, 545, 23 N.W. 215, 215 (1885); *State v. Evans,* 27 N.C. 603, 607 (1846); *Barnett v. Phelps,* 97 Or. 242, 247, 191 P. 502, 504 (1920); *Anderson v. Commonwealth,* 5 Rand. (26 Va. 627, 629 (1826)); *State v. Clark,* 406 N.W.2d 802, 804 (Iowa Ct.App.1987); *People v. Freaney,* 488 N.Y.S.2d 759, 761, 108 A.2d 228, 230 (N.Y.App.Div.1985); *Rex v.*

tution as "the offering or receiving of the body for sexual intercourse for hire." Maryland Code (1957, 1982 Repl. Vol.), Art. 27, § 16. Section 15 of Article 27 makes it unlawful "to solicit or to offer to ... solicit for the purpose of prostitution," and "[t]o engage in prostitution ... by any means whatsoever." Clearly, the statute is sufficiently specific so that the trial judge did not have to speculate as to what conduct the law condemned.

■ Here, it is obvious to us that the trial court concluded that prostitution and solicitation as isolated conduct had no bearing on the witness's credibility. Furthermore, there were no suggestions during the proffer of convictions that the witness was associated with a bawdy house, drugs, or other criminal misconduct manifesting a blatant disregard for the law. Under these circumstances the question of whether these convictions should be admitted to impeach was squarely within the discretion of the trial court. We cannot say that he abused that discretion by excluding the challenged evidence.

JUDGMENT AFFIRMED. APPELLANT TO PAY THE COSTS.

RODOWSKY and COUCH, JJ., concur.

ELDRIDGE and SMITH, JJ., concur in the judgment.

MURPHY, C.J., and McAULIFFE, J., dissent.

ELDRIDGE, Judge, concurring:

■ I agree with the result in this case and with most of Judge Cole's opinion. In one respect, however, I do concur with Judge McAuliffe's analysis. The threshold determination of whether or not a non-infamous crime reasonably bears upon credibility, *i.e.* whether it falls within Judge

---

*Delaval,* 3 Burr. 1434, 1438, 97 Eng.Rep. 913, 915 (1763). *See also* R. Perkins & R. Boyce, *Criminal Law* 469 (3d ed. 1982); 2 *Wharton's Criminal Law,* § 271, at 455 (C. Torcia 14th ed. 1980); 4 *W. Blackstone, Commentaries,* *64–65.

McAuliffe's category III or within his category IV, is a matter of law. It should not be viewed as a matter of trial court discretion.

I also agree with Judge McAuliffe that the trial judge in this case did not purport to exercise any discretion and ruled as a matter of law that prostitution and solicitation for prostitution do not reasonably bear upon the question of credibility. The trial judge, in effect, decided that these crimes fell within Judge McAuliffe's category IV.

My difference with Judge McAuliffe is that I fully agree with the trial judge's decision concerning prostitution and solicitation for prostitution. In my view, these two crimes do not reasonably bear upon the question of credibility. Consequently, evidence of conviction for prostitution or solicitation is, as a matter of law, inadmissible for use as impeachment evidence. For this reason, I concur with affirming the judgment below.

SMITH, J., has authorized me to state that he concurs with the views expressed herein.

McAULIFFE, Judge, dissenting in part.

I agree with the conclusion of the plurality that for purposes of determining admissibility for use as impeachment evidence all crimes may be divided into four categories:

| | | |
|---|---|---|
| I. | Treason and all common law felonies. | } |
| | | } Infamous crimes. |
| II. | The crimen falsi. | } |
| III. | Other crimes that reasonably bear upon the question of credibility. | |
| IV. | Other crimes that do not reasonably bear upon the question of credibility. | |

In obedience to the doctrine of *stare decisis,* and in the absence of any objection grounded upon the constitutional right to due process, I agree that evidence of a final conviction of any crime falling within category I or category II is admissible without the necessity of weighing the

probative value of such evidence against its potential for improper prejudice. I also agree that evidence of conviction of crimes falling within category III is admissible in the sound discretion of the trial judge, and that evidence of conviction of crimes falling within category IV is not admissible.

I cannot agree that the threshold determination of whether a crime falls within category III or category IV is a matter of discretion. Conviction of certain crimes, such as assault or battery, tells us little, if anything, about a person's credibility, *State v. Duckett*, 306 Md. 503, 511–12, 510 A.2d 253 (1986), and these crimes should be placed in category IV. Other crimes, such as indecent exposure, may or may not involve conduct "damnable as an affront to decency and social norms," and because we will not look beyond the fact of conviction to the underlying facts, must also be placed in category IV. *Ricketts v. State*, 291 Md. 701, 436 A.2d 906 (1981). Still other crimes, such as attempted rape, necessarily involve conduct that so reflects upon the moral character of the perpetrator as to be relevant to the question of credibility, and are placed in category III.

The decision of whether a particular crime belongs in category III or category IV is a matter of law. It is neither logical nor appropriate to permit one judge to find a crime to be within category III and another judge to find the same crime to be within category IV. Either the crime is such that in every case a conviction will sufficiently reflect on the moral character of the perpetrator to make that fact relevant on the issue of credibility, or it is not. That is not a matter of discretion.

Discretion comes into play when the trial judge is called upon to determine whether the fact of conviction of a category III crime should be admitted in a particular case. When the evidence is offered with respect to the credibility of a witness who is not a defendant, the inquiry is generally limited to matters of time and the age of the witness—how much time has intervened since the commission of that

offense and how old was the witness at the time the offense was committed. Weighing these factors against the nature of the category III crime involved, the judge must determine whether the evidence has any probative value. If it does, it should be admitted, with the matter of weight being for the trier of fact. If the facial probative value of the conviction of a category III offense has been completely offset by either or both of the factors of time and age, evidence of the conviction should be excluded. When evidence of the prior conviction is offered concerning a witness who is a defendant, the trial judge also must consider the possibility of improper prejudice, and must weigh the probative value of the evidence against that potential of prejudice. These functions involve the exercise of discretion, and it is appropriate to afford considerable deference to the determination made by the trial judge after weighing and considering these relevant factors.

In the present case, the excluded convictions were for prostitution and solicitation for prostitution. The plurality concedes that the statutory definitions of these crimes are "sufficiently specific so that the trial judge did not have to speculate as to what conduct the law condemned." Plurality opinion at [365, 535 A.2d at 453]. Notwithstanding that fact, and notwithstanding the fact that the trial judge did not purport to exercise any discretion but instead ruled as a matter of law that these crimes could never be in category III, the plurality affirms the ruling on the basis that the decision was within the discretion of the trial judge.

I am of the opinion that prostitution and solicitation for prostitution are category III crimes. A conviction of either of these crimes more probably than not reflects strongly enough on the moral character of the perpetrator to permit the trier of fact to consider the conviction along with all other relevant factors in assessing the credibility of the witness.

The State's only complaining witness was Cynthia Stewart, who claimed Petitioner had robbed her as she stood with her girlfriend on a street corner in Baltimore City at

1:30 a.m. on February 9, 1984. The girlfriend, who also was alleged to have been a victim, did not appear at trial. The State's case rested on the credibility of Cynthia Stewart, and the convictions that Petitioner proffered to aid the jury in assessing credibility were:

July, 1980—Prostitution.

June, 1981—Solicitation for prostitution.

August, 1981—Solicitation for prostitution.

October, 1983—Solicitation for prostitution.

The witness was 26 years of age at the time of trial in September, 1984. Even if the trial judge had considered the age of the convictions and the age of the witness, there is nothing about those factors that would have militated against the introduction of the evidence. This is not a case where the passage of time deprived an earlier conviction of its probative value, or where an isolated conviction occurred while the witness was immature and sufficient time had passed so that the earlier conviction may well have had no probative value in assessing the current character of the witness. This witness was not a defendant, so there did not exist in this case any possibility of improper prejudicial use of the evidence by the jury.

The trial judge was wrong as a matter of law in his determination that prostitution and solicitation for prostitution are not category III crimes. Moreover, under the circumstances of this case there was no room for the exclusion of this evidence as an exercise of discretion. In assessing the credibility of the complaining witness, the jury was entitled to know that she had been convicted of prostitution in 1980 and of solicitation for prostitution on three separate occasions since that time. Because of the importance of this witness's testimony, the error was not harmless.

I would remand the case to the Circuit Court for Baltimore City for further proceedings.

MURPHY, C.J., joins in this opinion.